### STATE EX REL. EUGENE JOHN DINNEEN v. RALPH H. TAHASH.

136 N. W. (2d) 847.

July 23, 1965—No. 39,513.

*Thomas M. Conlin,* for appellant.

*Robert W. Mattson,* Attorney General, *G. W. Snell,* Solicitor General, and *Charles E. Houston,* Special Assistant Attorney General, for respondent, warden of State Prison.

MURPHY, JUSTICE.

Appeal from the district court's order denying petition for habeas corpus. Defendant is confined in the state penitentiary on judgment of conviction for robbery in the first degree. Under authority of Townsend v. Sain, 372 U. S. 293, 83 S. Ct. 745, 9 L. ed. (2d) 770, he contends that the trial court erred in denying him the right to appear and be heard in an evidentiary hearing in support of his petition. The point raised requires an examination not only of Townsend v. Sain, *supra,* but of Fay v. Noia, 372 U. S. 391, 83 S. Ct. 822, 9 L. ed. (2d) 837, and Sanders v. United States, 373 U. S. 1, 83 S. Ct. 1068, 10 L. ed. (2d) 148, which Mr. Justice Harlan has characterized as a "trilogy of pronouncements" which "relegate to a back seat * * * the principle that there must be some end to litigation." [1]

The statements of the United States Supreme Court in these authorities must be applied in light of the facts as they appear in the record. From the record and supporting affidavit of defendant we learn that he was arrested in Chicago, Illinois, on July 19, 1956, and detained there for the Minneapolis Police Department. He waived extradition and was brought

[1] Dissent of Mr. Justice Harlan in Sanders v. United States, 373 U. S. 1, 23, 83 S. Ct. 1068, 1081, 10 L. ed. (2d) 148, 166.

to Minnesota. Defendant contends that while he was in custody in Illinois he talked to a detective-inspector of the Minneapolis police force who advised him to waive extradition; that if he did so, he would not be "hurt" in Minneapolis if he cooperated. Later, he again talked to the detective-inspector, who allegedly "advised him that if he waived extradition and cooperated he could deal for a ten year sentence in total and serve two and a half years." Defendant was returned to Minneapolis on July 23, 1956, at which time he claims the original assurances were repeated. Two informations were filed against him, each charging robbery in the first degree. He was represented by the public defender. He claims that prior to his arraignment the public defender made the same promises to him as the detective-inspector. He entered pleas of guilty to the informations on August 28, 1956, and in the same proceedings entered pleas of guilty to informations charging him with three prior felony convictions.[2]

The penalty for robbery in the first degree as provided by Minn. St. 1953, § 619.42, then in effect, is not less than 5 nor more than 40 years. Accordingly, under the provisions of § 610.29, the plea of guilty to each charge exposed defendant to a minimum of 10 years and a maximum of life imprisonment. The court imposed sentence on each plea separately as follows:

"THE COURT: This first one is file #44153. It is considered and ad-

---

[2] The informations charging the prior convictions were filed pursuant to Minn. St. 1953, § 610.29, which has since been repealed. That act, so far as applicable here, provides: "A person who, after having been three times convicted in this state of felonies, or attempts to commit felonies, or, under the laws of any other state or country, of crimes which, if committed in this state, would be felonies, commits any felony or attempts to commit any felony in this state, upon conviction of such fourth or subsequent offense, shall be punished as follows:

\* \* \* \* \*

"(2) If the fourth or subsequent offense is such that the offender upon a first conviction might be punished by an indeterminate sentence of imprisonment, then he shall be sentenced to imprisonment under an indeterminate sentence of which the minimum shall be not less than twice the shortest term prescribed upon a first conviction, and the maximum shall be for life; provided, that nothing herein shall reduce any minimum sentence now or hereafter fixed by any other law of this state."

judged that you, Eugene John Dinnen, as punishment for the crime of robbery in the first degree, to which you have pled guilty, and for three prior convictions, to which you have pled guilty, shall be confined at hard labor in the State Penitentiary at Stillwater, Minnesota, until from thence discharged by due process of law or released by competent authority. However, the maximum penalty will be limited to a period of fifteen years.

"THE COURT: It is considered and adjudged that you, Eugene John Dinnen—this is file #44154—as punishment for the crime of robbery in the first degree, to which you have pled guilty, and for the three prior convictions to which you have pled guilty, shall be confined at hard labor in the State Penitentiary at Stillwater, Minnesota, until from thence discharged by due process of law or released by competent authority. However, this sentence will also be limited to a period of fifteen years, and will be stayed indefinitely."

There is no claim of a jurisdictional defect or that defendant was not guilty of the crimes with which he was charged. The burden of his complaint is that he received a greater sentence than he was led to expect. He contends that the detective-inspector and the public defender assured him that he would receive a 10-year sentence and would be placed on parole in 2½ years. He maintains that he is illegally and unlawfully restrained of his liberty. He contends that he "objected violently" concerning this to the public defender after sentence was imposed but was admonished that everything would be worked out to his satisfaction. He also complains that after sentence the prison chaplain informed him that he would serve at most 3½ years.

The trial court was guided by our decisions in State ex rel. Lacklineo v. Tahash, 267 Minn. 237, 126 N. W. (2d) 646, and State ex rel. Becker v. Tahash, 265 Minn. 458, 122 N. W. (2d) 100, where under similar situations we determined that where the allegations relied upon by the petitioner were directly contradicted by his testimony as disclosed by the record, the proceedings should be dismissed as sham and frivolous without an evidentiary hearing. On the basis of the record before it, the trial court was of the view that the petition was not sufficient and was "sham and frivolous, and shows on its face that it has no merit." This conclusion was reached by the trial court from an examination of the record of the pro-

ceedings upon arraignment. On arraignment of defendant, the following took place:

"MR. FEIKEMA [assistant county attorney]: This defendant, your Honor, on the first charge of robbery in the first degree was arraigned on that charge on the 30th day of July, 1956, at which time he pled not guilty. I have been informed that he wishes to change that plea at this time.

"MR. BROWN [clerk of court]: Is it your desire to withdraw your plea of not guilty and plead guilty as charged?

"THE DEFENDANT: Yes.

"MR. FEIKEMA: The defendant has three prior convictions. State moves for the arraignment of this defendant on three prior convictions.

"MR. BROWN: An information has been filed against you under the name of Eugene Dinnen, charging you with three prior convictions. Do you want me to read these three prior convictions?

"THE DEFENDANT: No.

"MR. BROWN: What is your plea?

"THE DEFENDANT: Guilty.

"MR. LOHMANN [public defender]: May the record show I have advised this man relative to his plea to the three prior convictions. I have told him there was a presumption of innocence which would follow him throughout the trial until the verdict was brought in by the jury. I told him this could double his sentence. I told him he was entitled to a jury trial and have made him no promises of any kind, and no promises of any kind have been made to him in consideration of his plea of guilty to any prior convictions. Is that true, Mr. Dinnen?

"THE DEFENDANT: Yes.

"MR. LOHMANN: We discussed this matter together?

"THE DEFENDANT: Yes sir.

"MR. FEIKEMA: We have the other robbery in the first charge. Does the Court wish that we accept a plea of guilty to that charge?

"(Consultation of counsel privately with Court)

"MR. FEIKEMA: One other charge, your Honor, robbery in the first degree against this defendant to which he pled not guilty on the 30th day of July. I am informed he wishes to plead guilty to that at this time. Is that your desire, sir, to plead guilty?

"The Defendant: I plead guilty.

"Mr. Feikema: Three prior convictions on this. State moves for the arraignment of this defendant on these three prior convictions.

"Mr. Brown: An information has been filed against you under the name of Eugene J. Dinnen and charging you with three prior convictions. What is your plea, guilty or not guilty?

"The Defendant: Guilty.

"Mr. Lohmann: May the record show that I gave you the same advice in reference to this plea as I did on the other. Is that correct?

"The Defendant: Yes sir.

"Mr. Lohmann: And I have made no promises of any kind to you nor have any promises been made to you in consideration of your plea?

"The Defendant: That is right."

Prior to sentence defendant was interrogated by the trial court with reference to previous convictions. The following questions and answers are taken from the record:

"Q   What were these convictions for?
"A   Armed robbery, twenty years—eighteen years ago.
"Q   Where was that?
"A   In Ohio.
"Q   And what were the other two?
"A   Indecent assault.
"Q   And where was that?
"A   In Minneapolis.
"Q   How long ago was that?
"A   Eight years ago.
"Q   You are charged here specifically in this first charge, as I understand it, with taking away from the possession of one Everett Green $1,566.57, the property being the property of the Red Owl Stores, is that correct? I guess the first one is $6,362.00, that was a Red Owl Store, and taking away from one Kathleen Selmer. You admit that, do you?
"A   Correct.
"Q   You also admit the second robbery, is that right?
"A   Yes.
"Q   Were there other robberies you were involved in?

"A   Yes, the Anglesey Bar about last August 5th, and that was 1955; the Dutchman's Bar in February, and an attempt on the Anglesey in February, and a Red Owl at Thirty-ninth and Nicollet in March, and a Red Owl at Twenty-fourth and Hennepin in May, and a Red Owl in Richfield on Nicollet Avenue in May, and the Red Owl at Miracle Mile in July.

"Q   That is all of them then, is it?

"A   That is all."

■   It is well established by our decisions that unsupported assertions without more are wholly insufficient to overcome the presumption of regularity which attaches to a judgment of the court. State ex rel. White v. Tahash, 261 Minn. 267, 111 N. W. (2d) 523. In State ex rel. Becker v. Tahash, 265 Minn. 458, 122 N. W. (2d) 100, we pointed out that a presumption of validity is accorded a record of proceedings resulting in judgment of conviction unless a jurisdictional defect appears on the face of the record. State ex rel. Rajala v. Rigg, 257 Minn. 372, 101 N. W. (2d) 608; State ex rel. May v. Swenson, 242 Minn. 570, 65 N. W. (2d) 657. In State ex rel. Becker v. Tahash, 265 Minn. 458, 461, 122 N. W. (2d) 100, 103, we said:

" * * * In a habeas corpus proceeding, extrinsic evidence submitted in support of a petition which contradicts the facts disclosed by the record is inadmissible to establish a jurisdictional defect. Since no error affecting the jurisdiction of the court appears on the face of the record, and since the accuracy thereof is neither challenged by petition nor can be contradicted by extrinsic evidence, the facts shown in the record must control. The fatal deficiency of the petition is that the allegation that his plea was induced by promises or threats is in direct conflict with petitioner's testimony when he entered the plea."

■   Procedures with reference to the application of habeas corpus as a postconviction remedy must be viewed in light of the three United States Supreme Court decisions already noted. Without oversimplifying the holdings in those cases it may be said that it is established by Fay v. Noia, *supra,* that conventional notions of finality of litigation may not stand in the way of review where an infringement of constitutional rights is alleged and that the principle of res judicata is no longer applicable to habeas corpus proceedings.

14

In Townsend v. Sain, *supra,* it was held that where a fact dispute is presented on petition for habeas corpus, the defendant is entitled to an evidentiary hearing if he "did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts." 372 U. S. 312, 83 S. Ct. 757, 9 L. ed. (2d) 785. The Townsend case places upon the trial court the responsibility of determining "whether petitioner's allegations, if proved, would establish the right to his release." 372 U. S. 307, 83 S. Ct. 754, 9 L. ed. (2d) 782. We take it that the foregoing statement refers to allegations relating to the infringement or deprivation of a constitutional right. We do not understand that the court intended that every bald assertion as to error or "colorable allegation" of prejudice relating to the proceedings by which he was convicted will entitle a petitioner to an evidentiary hearing. The court in the Townsend case, recognizing the responsibility of the trial court in passing upon the merits of these petitions, said (372 U. S. 319, 83 S. Ct. 760, 9 L. ed. [2d] 789):

" * * * the too promiscuous grant of evidentiary hearings on habeas could both swamp the dockets of the District Courts and cause acute and unnecessary friction with state organs of criminal justice, while the too limited use of such hearings would allow many grave constitutional errors to go forever uncorrected. The accommodation of these competing factors must be made on the front line, by the district judges who are conscious of their paramount responsibility in this area."

The case of Sanders v. United States, *supra,* is of importance as it applies to the case before us because it throws some light on what the United States Supreme Court means by an evidentiary hearing. From this decision it is apparent that the petitioner does not have the right to appear and be heard as a matter of course. The court there discussed the issue in terms of habeas corpus proceedings under Federal statutes, 28 USCA, §§ 2255 and 2244. It pointed out that Federal habeas corpus does not comprehend that a petitioner shall be entitled in every instance to testify at a hearing. "Congress, recognizing the administrative burden involved in the transportation of prisoners to and from a hearing in the sentencing court, pro-

vided in § 2255 that the application may be entertained and determined 'without requiring the production of the prisoner at the hearing.' " 373 U. S. 20, 83 S. Ct. 1080, 10 L. ed. (2d) 164.

The important observation expressed in Sanders is this (373 U. S. 21, 83 S. Ct. 1080, 10 L. ed. [2d] 164):

" * * * [T]he sentencing court has discretion to ascertain whether the claim is substantial before granting a full evidentiary hearing."

The procedures with reference to the kind of hearing to which the petitioner is entitled are left pretty much to the sound discretion of the trial court, who has the responsibility of examining the merits of the petition to determine if the defendant has had a fair shake. If it appears from the petition that it alleges defects of some substance, it should not be summarily dismissed merely because of what may clearly appear in the record to the contrary. If it appears from the petition and record and such investigation as the trial court should make that the defendant has been deprived of a constitutional right, a full evidentiary hearing should be accorded.

Each case must be considered on its own particular facts. It is understandable that the Supreme Court of the United States had no trouble in finding constitutional defects in the cases cited. It was apparent from the record in Townsend v. Sain, *supra,* that the confession used in the defendant's trial was involuntary in that it was given by a near mental defective who was also a drug addict. In Fay v. Noia, *supra,* a confession used in the prosecution of the petitioner was found to have been coerced in violation of constitutional rights, on appeal by two codefendants. The constitutional defect in Sanders v. United States, *supra,* was as substantial as in Gideon v. Wainwright, 372 U. S. 335, 83 S. Ct. 792, 9 L. ed. (2d) 799. There, the defendant was prosecuted and sentenced without benefit of counsel. If we give these authorities a fair and reasonable application to the case before us, it seems to us that we must agree with the trial court that the record itself clearly demonstrates that the assertions made by the petitioner are frivolous and without merit. In these proceedings defendant has had the assistance of an able, court-appointed attorney. Neither in the proceedings before the trial court nor in the arguments presented to this court is there any representation or suggestion as to what "documentary evidence and testimony" there might be which would support petitioner's claim that he

was induced to enter his plea by false promises. On the contrary, the record establishes that defendant was well represented by the public defender; that no promises or inducements were made to him; and that as a matter of fact the sentence he received was minimal under the circumstances, in that it was "not to exceed 15 years" where life imprisonment might have been imposed.

■ One further observation should be made. It is only reasonable to assume that sometime either before or after his arraignment persons with whom defendant talked—the detective-inspector, the public defender, or the chaplain—may have told defendant that the minimum sentence which might be imposed would be 10 years and that he might be considered for release on parole in 2½ or 3½ years. The hope from these statements apparently fathered the belief that he would be released on parole after a reasonable length of confinement. There is a familiar ring to this case which arouses the curiosity of a court as to why, after 9 years of confinement, parole has not been granted, and which tempts a court to reach for some answer. It appears from the record that defendant, who is now 48 years of age, has spent much of his life in penal institutions. If we are to believe the statements which the public defender made to the trial court prior to sentence, much of his difficulty may be attributed to what the public defender describes as an "alcoholic problem." Unless there is some grave reason to prevent it, he should be given an opportunity to salvage what is left of his life. But we do not know the reasons which stand in the way of his release and cannot say that the Adult Corrections Commission has not acted responsibly. It is our feeling that 9 years is a long confinement for a person whose difficulties have grown out of an addiction to alcohol. We can only suggest that his application for parole be carefully considered.

Affirmed.