GLENN HARRY SWANSON v. STATE.

169 N. W. (2d) 32.

June 27, 1969—No. 41231.

*C. Paul Jones,* State Public Defender, and *Robert E. Oliphant,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *George M. Scott,* County Attorney, and *Leonard D. Brod,* Assistant County Attorney, for respondent.

Heard before Nelson, Murphy, Otis, Sheran, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

A criminal complaint charging defendant-appellant, Glenn Swanson, with sodomy contrary to Minn. St. 1961, § 617.14, was filed December 8, 1958. An information was filed December 9, 1958. Defendant was arraigned and pleaded guilty on December 10, at which time a presentence investigation was ordered. On January 26, 1959, defendant was sentenced to an indeterminate term not to exceed 20 years and was committed to the State Reformatory at St. Cloud. He was transferred to the State Prison at Stillwater August 29, 1960.

Defendant filed a petition for a writ of habeas corpus in Washington County District Court July 14, 1965, which petition was denied on the ground that petitioner had not complied with Minn. St. 589.04(4). A new petition for a writ of habeas corpus was filed in the Washington County District Court September 22, 1966, which petition was denied without hearing. A notice of appeal to this court was filed October 14, 1966. Upon petitioner's motion in this court to remand this case to the trial court for an evidentiary hearing under the Postconviction Remedy Act, L. 1967, c. 336, Minn. St. c. 590, on August 28, 1967, we ordered the

case remanded to Hennepin County District Court for that purpose. A petition for postconviction relief was filed September 7, 1967, and hearing was held thereon October 25, 1967, in Hennepin County District Court before the Honorable Eugene Minenko. The petition was denied and defendant appealed to this court January 16, 1968.

Defendant was charged by information with the crime of sodomy under Minn. St. 1961, § 617.14, following the complaint of Lorayne Marty, mother of RoJean Marty, victim of the offense. The victim had been babysitting for the estranged wife of defendant, Mrs. Janice Swanson. The victim stated that at approximately 12:50 a. m. December 2, 1958, defendant telephoned the Swanson residence and asked if his wife was at home. The victim informed him that his wife was not at home and defendant shortly thereafter arrived at the residence at 3010 Fremont Avenue North in Minneapolis.

Defendant engaged the victim in conversation, eventually bringing up the topic of sexual intercourse. The victim attempted to call her mother but was prevented from doing so by defendant, who placed his hand over her mouth and forced her into a vehicle. Defendant drove the victim to the approximate location of Lake Drive and France Avenue North in Robbinsdale. He then pointed a gun at her and clicked it, stating he would get her one way or another. Defendant then forced the victim to partially disrobe and lie on the front seat, whereupon he committed a sodomous act upon her. The following day the victim related the incident to her mother.

Defendant was arrested by the Brooklyn Center police December 2, 1958. Detectives Fred Weegmann and Joe Jaremko, who investigated the matter for the Hennepin County sheriff's office, first interviewed defendant in the Hennepin County jail on December 3, 1958, asking him if he wished to discuss the matter. Defendant readily agreed to speak with the detectives regarding the occurrence. During this first interview the detectives asked

defendant if he wanted an attorney and he stated he did not need one. Defendant at that time conversed with the detectives regarding the incident and was asked if he would give a written statement, to which he agreed. The detectives then left, returning in the afternoon of the same day with a stenographer. Defendant was advised of his right to counsel and that anything he said could be used against him in court. He was then asked if he was still willing to give a statement, and he agreed. At that time his statement was taken in the presence of the stenographer. He then related all the events which took place on the night of December 2, 1958. Defendant was asked after giving the statement whether or not it was given of his own free will without any threats or promises, and he responded that it was. A copy of the statement was given to defendant after it was transcribed.

Shortly after giving the statement defendant conferred with an attorney of his own choice, Conrad J. Carr. The discussions between defendant and his counsel centered around the following points: (1) That a confession had been obtained, fully implicating defendant in the crime as charged; (2) that a revolver had been seized by police which was allegedly used against the victim; and (3) that a medical examination revealed evidence which could be used against defendant. These basic points were brought out by defendant himself during the postconviction proceedings.

Following discussion of these points, it was decided by defendant and his self-selected counsel that he should enter a plea of guilty to the crime as charged. On December 10, 1958, defendant appeared in district court before the Honorable William C. Larson for arraignment. Defendant entered a plea of guilty to the charge as specified in the information, and the then assistant county attorney, C. Paul Jones, questioned defendant. When asked whether any threats or promises had been made to induce him to enter his plea of guilty, defendant answered in the negative.

■ It is clear that defendant freely and voluntarily, with no threats, promises, or inducements, entered his plea of guilty.

The postconviction transcript indicates that at the hearing Detective Weegmann stated, in response to a question of the prosecutor as to whether or not he had said anything in regard to the disposition of the case, that he could not do this because it was not up to him and that it was entirely up to the court. Detective Weegmann stated that he did not make any promises that defendant would receive outpatient treatment or that he would be placed on probation. The detective further stated that he did not say he could "fix it" with the judge concerning what type of sentence defendant could receive.

It is likewise clear that defendant's assertion that his counsel told him the crime would be handled like a carnal knowledge charge and that the maximum sentence would be 7 years was not made at the time of the arraignment and plea. In fact, defendant admitted at the postconviction hearing that he had testified as follows at the arraignment:

"Q. Has anybody made any threats or promises to you to induce you to enter a plea of guilty?

"A. No, Sir.

"Q. I take it then that you are entering a plea of guilty freely and voluntarily because you are guilty as charged.

"A. That is correct, yes."

If defendant's allegations were true, it would seem that they could easily have been verified by the testimony of Mr. Carr at the postconviction hearing, since the burden of proof rested upon defendant to substantiate the claims made. However, he did not choose to call Mr. Carr, and his claims are without support of any kind.

■ This court considered similar questions in State ex rel. Dinneen v. Tahash, 272 Minn. 7, 136 N. W. (2d) 847. There, citing State ex rel. White v. Tahash, 261 Minn. 267, 111 N. W. (2d) 523, we reiterated the well-established rule that unsup-

ported assertions without more are wholly insufficient to overcome the presumption of regularity which attaches to the judgment of a court. Those cases are controlling here. Defendant's assertions are wholly insufficient to overcome the presumption of regularity attaching to the judgment of the trial court.

 Defendant also asserted at the postconviction hearing that his confession was illegally obtained because he had repeatedly asked for a lawyer during the interrogation and one was not furnished. However, the confession was obtained in 1958, thus preceding both Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. ed. (2d) 977, and Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. (2d) 694. Those decisions do not have retroactive application; hence, defendant's claim is without significance.

Before the postconviction hearing defendant had raised this question and had challenged the legality of a search of his car in a petition for a writ of habeas corpus which was denied by an order filed October 3, 1966. The district court in that order cited State v. Richter, 270 Minn. 307, 133 N. W. (2d) 537, certiorari denied, 382 U. S. 860, 86 S. Ct. 119, 15 L. ed. (2d) 98, and State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N. W. (2d) 3, correctly stating that Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. ed. (2d) 1081, 84 A. L. R. (2d) 933, was not retroactive. See, Linkletter v. Walker, 381 U. S. 618, 85 S. Ct. 1731, 14 L. ed. (2d) 601.

Furthermore, the evidence obtained was not used in a trial, since with full knowledge of his rights defendant entered his plea of guilty. Ordinarily, such plea admits the essential elements of the crime. State v. Hemstock, 276 Minn. 457, 150 N. W. (2d) 562.

██ There is no merit to defendant's claim that he was not informed the consequences of his plea or was otherwise inadequately represented by counsel. He hired counsel of his own choice and there is nothing in the record to indicate that he did not fully consult with him. When a court-appointed counsel rep-

resents a defendant, it is presumed that his counsel will advise him of his rights and the consequences that will follow a plea of guilty or not guilty. Where a defendant selects and retains counsel, however, the state is relieved from the obligation of seeing that defendant has the effective assistance of counsel. Under the circumstances, any lack of skill or incompetence of counsel must be imputed to the defendant who employed him. The acts of counsel under the circumstances here became those of his client and were so recognized and accepted by the court who took the plea, since defendant did not repudiate them by making known to the court at the time his objection to or lack of concurrence in them. A defendant cannot seemingly acquiesce in his counsel's defense of him or his lack of it and, after the trial has resulted adversely, have the judgment set aside because of the alleged incompetence, negligence, or lack of skill of that counsel. State ex rel. Rankin v. Tahash, 276 Minn. 97, 101, 149 N. W. (2d) 12, 15. Accord, State v. Hemstock, *supra.*

We find nothing in the record to support defendant's contention that he received inadequate representation prior to, during, and after the entry of his plea of guilty. Respondent in its brief points out that at the time of sentencing Judge Larson said to Mr. Carr, defendant's counsel:

"Is there anything you want to mention now, Mr. Carr? I might say that I appreciate your efforts in this situation. I know that you have devoted a great deal of time to it and you have called on me a number of times."

This commendation from the trial court would hardly support defendant's claim that his counsel had given him but a few moments of his time. That defendant did receive adequate representation is further amplified by his own admission at the post-conviction hearing that his counsel, after discovering that the police had obtained a confession from him, the weapon used, and a medical report, advised him to plead guilty. A search of the record reveals clearly that there was nothing else to be discussed

which would have been germane to the charge placed against defendant.

The record herein, viewed in the light most favorable to the judgment of conviction, supports the conclusions that defendant's plea of guilty was made freely and voluntarily, with no inducements or promises, and that he was given more than adequate representation throughout the entire proceedings. See, State v. Williams, 282 Minn. 240, 163 N. W. (2d) 868.

The conviction stands affirmed.

Affirmed.