## JAMES EUGENE GALLAGHER v. STATE.

176 N. W. (2d) 618.

March 20, 1970—No. 41662.

*C. Paul Jones,* State Public Defender, and *Robert E. Oliphant* and *Roberta K. Levy,* Assistant State Public Defenders, for appellant.

*Douglas M. Head,* Attorney General, *John C. Arko,* County Attorney, and *Robert E. Lucas,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Sheran, Peterson, Frank T. Gallagher, and Theodore B. Knudson, JJ.

THEODORE B. KNUDSON, JUSTICE.\*

Appeal from an order denying postconviction relief.

Petitioner, James Eugene Gallagher, pleaded guilty to the crime of rape and was convicted on January 6, 1959. His unsuccessful petition for relief, filed May 3, 1968, in the St. Louis County District Court, alleged in essence that (1) his guilty plea was entered without an understanding of the elements of the crime with which he was charged, and (2) his attorney did not provide legally adequate representation. We consider these issues in the light of two well-established principles.

### Burden of Proof

Under the rules governing postconviction proceedings the petitioner must bear the burden of establishing, by a fair preponderance of the evidence, facts which would warrant a reopening of his case. Minn. St. 590.04. See, also, Cable v. State, 284 Minn. 89, 169 N. W. (2d) 391.

As this court said in Cable in commenting on the burden of proof in such proceedings (284 Minn. 93, 169 N. W. [2d] 394):

"* * * [T]he defendant has the burden of establishing by a fair preponderance of the evidence that he has been denied a protection guaranteed by the Bill of Rights—as in Gideon— or

---

\* Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

that he was deprived of fair treatment amounting to a violation of fundamental rights of due process."

## Presumption of Regularity

Inasmuch as the petition herein is a collateral attack on the judgment of conviction, the latter carries a presumption of regularity.

In State ex rel. Kons v. Tahash, 281 Minn. 467, 474, 161 N. W. (2d) 826, 831, certiorari denied, 394 U. S. 961, 89 S. Ct. 1304, 22 L. ed. (2d) 562, we said:

"The instant case is not unlike that with which we dealt in State ex rel. Fruhrman v. Tahash, 275 Minn. 242, 250, 146 N. W. (2d) 174, 180. There we held the trial court was justified in not accepting defendant's assertion that his counsel failed to advise him of his rights during a 25-minute consultation. In affirming an order discharging a writ of habeas corpus, we stressed the fact that defendant did not clearly and unequivocally profess his innocence and that it was a relevant consideration that the defendant had waited 10 years to challenge his conviction. We have also recently reiterated the rule that a 'post conviction proceeding is a collateral attack on a judgment which carries a presumption of regularity and which, therefore, cannot be lightly set aside.' "

## Defendant's Understanding of the
## Elements of the Crime Charged

In a statement petitioner gave to the police on July 20, 1957, 22 days after the alleged crime, he admitted attacking a young woman as she got out of her car in the early hours of the morning in a residential area of Duluth. He said that when the victim had approached to within 5 or 6 feet of her front porch he leaped from his hiding place in the bushes adjoining the porch and struck her three or four times on the head with a flashlight. He said he pulled her to the ground, started molesting her, and asked her if he could have sexual intercourse with her. According to his statement she said "yes." Petitioner now maintains that he

pleaded guilty to a crime which he did not realize required an absence of consent on the part of the victim. He claims that he would not have pleaded guilty had he been fully apprised of the elements of rape since, as his statement asserts, he received the victim's consent for at least part of his unlawful acts.

We note that the record of the arraignment hearing shows —and petitioner admitted at the postconviction hearing—that the clerk read the information to the petitioner and his attorney. Petitioner also was supplied with a copy of it.[1] The information charged, in part, that petitioner did "wrongfully, unlawfully, wilfully and feloniously have sexual intercourse, with [the victim], against her will and without her consent." Petitioner admitted

---

[1] The following occurred at the arraignment:

"Mr. Burak [Petitioner's counsel]: We wish to enter a plea, your Honor.

"Mr. Sjoselius [Assistant County Attorney]: Do you have a copy of the —

"Mr. Burak: We waive the reading of the information.

"The Court: I don't believe it should be waived in this particular case. Read the information.

"Mr. Sjoselius: May the record show that the defendant has been supplied with a copy of the information.

"Mr. Burak: Right, it may so show.

"The Court: Mr. Defendant, come up here, please.

"(The information was read by the clerk.)

"The Court: What is your plea?

"The Defendant: Guilty, your Honor.

"The Court: The defendant having in open court entered the plea of guilty, I wish to ask two or three questions. Did anybody talk you into making this plea?

"The Defendant: No.

"The Court: Did anybody promise you anything?

"The Defendant: No.

"The Court: Did anybody threaten you?

"The Defendant: No.

"The Court: This was of your own free will then?

"The Defendant: Yes, Sir."

that at the time of the arraignment he understood he had a right to enter a plea of not guilty and to have his guilt or innocence determined by a jury; that "when a jury goes out in any case it has to come back unanimous"; that he could get a sentence of 30 years for rape; that the judge refused to make any promises; that no one forced him to plead guilty; and that no one made a deal or bargain with him.

At the postconviction hearing, petitioner was not always consistent in his testimony concerning his understanding of the elements of rape, but at one point he said:

"I thought that I was guilty of—of hitting this girl—this lady, assaulting her and having relations, intercourse with her and with her permission."

At the postconviction hearing petitioner's trial counsel was asked whether he had any recollection of discussing the elements of the crime of rape with the defendant on the day of the arraignment. He answered:

"Well, I am sure I had discussed it long before that, or I wouldn't have gotten that far."

He was asked, in addition, whether petitioner ever contradicted the statement (the claim that the victim consented). He responded by indicating that he couldn't remember specifically what happened, but also testified:

"I will answer you this way. I wouldn't have let him plead guilty if he hadn't contradicted that statement."

While the trial court's method of handling the plea did not include the deliberate recitation of the elements of the crime which is expected in present procedure, it certainly met the standards accepted at the time petitioner entered his plea [2] and left him, in our opinion, with an understanding in fact of the crime with which he was charged.

---

[2] See, Cable v. State, 284 Minn. 89, 93, 169 N. W. (2d) 391, 394.

Moreover, even if we were to assume, as petitioner urges, that the victim complied with his "requests" after he had assaulted her, there would still be an absence of evidence of legal consent under the circumstances disclosed by the record. We said in the first paragraph of the syllabus to Knisley v. State, 285 Minn. 224, 172 N. W. (2d) 769, 770:

"Statement of appellant concurrent with acceptance of his plea of guilty to the crime of indecent assault that some of female victim's conduct was voluntary after she was shown a knife would not be evidence of express consent within the meaning of Minn. St. 1961, § 617.08, and there was no error in refusing to vacate the plea."

### Inadequacy of Counsel

Since the claim of inadequacy of counsel is interwoven with the charge that the elements of the crime were not explained, we have given at least incidental consideration to petitioner's claim that he did not receive effective assistance of counsel. We now focus direct attention upon it.

The petitioner's parents recognized the gravity of the charge and stood by their son throughout the legal proceedings. Shortly after their son's arrest, they retained trial counsel, who had been recommended by the county attorney of Carlton County (an assistant county attorney of Hennepin County for many years since). Subsequently, petitioner and his parents conferred with his counsel at least three times. Petitioner's counsel also conferred with the Carlton County attorney on several occasions. Petitioner's lawyer represented him in at least two pretrial hearings relating to petitioner's competence before the plea was entered.

When asked at the postconviction hearing what he remembered telling the petitioner with respect to his constitutional rights, if anything, his counsel answered:

"Well, I cannot remember, of course, any specific conversation. But I'd been practicing law for 20 some years and I am sure I

wasn't naive enough not to discuss what his rights were; like I would with any client and I have done this on all cases where I have had any dealings or any clients that I had to represent in a criminal case."

He was also asked:

"Did you have any general set of rules as to advising clients in these matters?

"A Yes, in a discussion of it I, of course, would tell them what the rights were, what the facts were, relate them to what had to be proved. The usual."

Inadequacy of counsel was the concern of this court in State ex rel. Rankin v. Tahash, 276 Minn. 97, 101, 149 N. W. (2d) 12, 15, where we said:

"'* * * Where court-appointed counsel represents a defendant, it is presumed that his counsel advised him of his rights and the consequences that would follow a plea of guilty or not guilty. [Citations omitted.] *Where the defendant selects and retains counsel, the state is relieved from the obligation of seeing that defendant has the effective assistance of counsel.* Davis v. Bomar (6 Cir.) 334 F. (2d) 84; Schlette v. California (9 Cir.) 284 F. (2d) 827, certiorari denied, 366 U. S. 940, 81 S. Ct. 1664, 6 L. ed. (2d) 852. In the Schlette case it was stated (284 F. [2d] 836):

"'"* * * The law is well settled that dissatisfaction with one's counsel in retrospect is not the same as the deprivation of the right to counsel within the meaning of the due process clause.'" (Italics supplied.)

See, State ex rel. Drysdale v. Tahash, 278 Minn. 361, 154 N. W. (2d) 691; State ex rel. Moriarty v. Tahash, 261 Minn. 426, 112 N. W. (2d) 816.

Counsel for petitioner at time of trial, after a lapse of approximately 10 years, understandably had no specific recollection of the conversations and discussions he had with petitioner and

his parents. However, on the basis of his practice in all cases of explaining to his clients the elements involved in any charges against them, he was sure he had made such an explanation in this case.

In Wilson v. Wiman (6 Cir.) 386 F. (2d) 968, the United States Court of Appeals held that a showing that a name found on petitioner's indictment was that of a practicing attorney in the area at the time of petitioner's criminal trial, evidence that it was the custom of the courts in that area to enter the name of defense counsel on the face of the indictment, and the presumption of regularity in court procedures overcame the mere allegation of petitioner that he had been without counsel.

In Cowell v. Minnegas Co. 286 Minn. 535, 176 N. W. (2d) 84, in which the only issue was whether the statute of limitations had run on an employee's compensation claim, the issue turned on the question whether the treating doctor's bill had been paid. The latter testified that if the bill had not been paid, it would have been turned over to a collector, and he had no record that this was done. We held that this evidence of his practice, although slim, justified the Industrial Commission in inferring that the bill was paid, there being no evidence to the contrary.

In the instant case, the postconviction trial judge may have given considerable weight to the practice of petitioner's counsel in explaining the elements of the crime charged and the constitutional rights of a defendant in all criminal cases. Under the foregoing authorities we cannot say as a matter of law that the postconviction court was wrong in finding that the petitioner received adequate representation. In fact, a careful reading of the record satisfies us that counsel in the trial court provided adequate representation and guidance before the plea was entered and made an effective argument at the sentencing stage. In addition, we are satisfied that he explained adequately the elements of the crime and that petitioner entered his plea with an understanding of those elements. Unsupported assertions without more are wholly insufficient to overcome the presump-

tion of regularity which attaches to the judgment of a court. Swanson v. State, 284 Minn. 66, 70, 169 N. W. (2d) 32, 35. Moreover, ordinarily conduct of retained counsel is imputed to the defendant. 284 Minn. 72, 169 N. W. (2d) 36.

Affirmed.

