Kling Emmett BERRY,
Petitioner-Appellant,

v.

STATE of Minnesota, Respondent.

No. C0–84–1058.

Supreme Court of Minnesota.

March 22, 1985.

Jack S. Nordby, Minneapolis, for petitioner-appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas Johnson, Henn. Co. Atty., Beverly J. Wolfe, Asst. Co. Atty., Minneapolis, for respondent.

AMDAHL, Chief Justice.

Appellant Kling Berry appeals from the order of the Hennepin County District Court denying his petition for postconviction relief. The petition was based upon a claim of newly-discovered evidence. After a 2-day postconviction hearing, the trial court denied appellant's request for a new trial. We affirm.

Following a 3-day trial, appellant was convicted by a jury of murder in the first

degree, Minn.Stat. § 609.185, subd. 2, on October 27, 1978. The trial court denied appellant's initial petition for postconviction relief, and appellant appealed both his conviction and the denial of postconviction relief to this court. We affirmed the trial court in *State v. Berry*, 309 N.W.2d 777 (Minn.1981). The facts of the original trial are summarized in detail in that opinion.

The decision whether to grant a new trial based upon newly-discovered evidence rests with the trial court and will not be disturbed unless there is an abuse of discretion. *State v. Wofford*, 262 Minn. 112, 114 N.W.2d 267 (1962); *State v. Wheat*, 166 Minn. 300, 207 N.W. 623 (1926); *State v. Nelson*, 91 Minn. 143, 97 N.W. 652 (1903). A petitioner seeking postconviction relief has the burden of establishing, by a fair preponderance of the evidence, facts which warrant a reopening of the case. Minn.Stat. § 590.04, subd. 3 (1984); *Gallagher v. State*, 286 Minn. 335, 176 N.W.2d 618 (1970). A new trial may be granted on the basis of newly-discovered evidence—

> if the petitioner shows that the evidence could not have been discovered through the exercise of due diligence before the trial; that at the time of the trial the evidence was not within petitioner's or his counsel's knowledge; that the evidence is not impeaching, cumulative, or doubtful; and that it would probably produce a result different from or more favorable than that which actually occurred.

*State v. Caldwell*, 322 N.W.2d 574, 588 (Minn.1982). *See also State v. Baugh*, 323 N.W.2d 804, 806 (Minn.1982); *Martin v. State*, 295 N.W.2d 76, 78 (Minn.1980); *State v. Bergeson*, 203 Minn. 88, 89, 279 N.W. 837, 838 (1938).

Appellant based his current petition for postconviction relief upon the testimony of Mary Bjorgo, a witness who surfaced in 1982, 4 years after his conviction. At the postconviction hearing, Bjorgo testified that she had visited Edward Curry, Sr., at his house on 26th and Aldrich on July 4, 1978, the day of the murder. She testified that she heard screaming from the nearby Berry house at about 12:30 a.m. that night. She then saw a man come out of the house, get in a white pickup, and drive away. Bjorgo said she saw appellant come home in a pickup, just as the other man was leaving. The police arrived a short time later.

Bjorgo's testimony at the postconviction hearing was both internally contradictory and inconsistent with her prior statements regarding what she had seen on July 4–5, 1978. Bjorgo's testimony was also contradicted by the testimony of other witnesses at the hearing.

While explaining why she did not come forward sooner, Bjorgo, who described appellant as a friend, said she did not know what happened to appellant. She also claimed, however, that she had told people over the years that the wrong person was in prison for the crime. Bjorgo said she heard appellant was arrested the day after the incident, then said she did not hear that appellant had been arrested. When asked to explain this, Bjorgo said she heard, but did not know, appellant had been arrested.

In a written statement in 1982, Bjorgo said the incident occurred on Bryant Avenue. At the hearing, Bjorgo said the incident occurred on Aldrich Avenue, claiming that she had confused what she saw on July 4–5, 1978, with an incident which occurred when the Berrys lived on Bryant. In her statement, Bjorgo said she was on the porch at Grace Nafstead's house with Nafstead and Arthur Whitter when she heard the screaming; at the hearing, she said she had been on the porch at the Currys' house with Leonard and Larry Ruschmeier, Marlene Torgerson, and Edward Curry, Jr. Bjorgo said in her statement that the victim screamed for 10 minutes, but testified at the hearing that the screams did not last very long. In her statement, Bjorgo said the man who fled the Berry house was wearing a blue shirt; at the hearing, she said it was white. On cross-examination, she said the shirt was blue, but was faded so it looked white. Finally, Bjorgo told an investigator that

appellant was sober that night, but said at the hearing that he was drunk.

Bjorgo's testimony was also internally contradictory. She said on direct that she had been at Grace Nafstead's in the afternoon of July 4, 1978. She said on cross that she had not been at Nafstead's at all that day. Bjorgo came forward with her observations in the summer of 1982, but did not realize that she was mistaken about the address where the crime occurred until an investigator told her, 1 week before the hearing in June of 1983, that he thought she had the wrong address. Bjorgo said the investigator told her he had discovered from Arthur Whitter's widow that Whitter never told her he had seen something to do with the murder, before Bjorgo realized she had the wrong address. Bjorgo then promptly denied this and said he told her *after* she had realized her mistake.

Bjorgo said that she had visited with Edward Curry, Sr., on July 4, 1978, and that Larry and Leonard Ruschmeier, Marlene Torgerson, and Edward Curry, Jr., were with her on the Currys' porch when the screaming began and when the police came. Leonard Ruschmeier testified that Bjorgo was on the Currys' porch on July 4, 1978, but that he did not hear any screaming or see anyone run out of the house. He then said he had probably left before the police arrived. Marlene Torgerson, who lived in the Currys' house, said she was out on the porch with her son early in the evening, and then was *alone* on the porch until the ambulance arrived at the Berrys' house. Edward Curry, Sr., testified that he did not see Bjorgo at his house at all on July 4, 1978. Finally, Edward Curry, Jr., said he went out drinking with Larry Ruschmeier that night and did not return until most of the events were over and only personnel from the morgue remained at the Berrys' house.

Appellant also testified at the postconviction hearing. At his trial, appellant had testified that he went to bed around 9 p.m. the night of the murder, woke up at 1 a.m., and found the victim on the floor of the living room. At the hearing, appellant, claiming a refreshed memory, said he had gone to bed at 9 p.m., woke up and went out to look for lost car keys, fell asleep by some trash cans, woke up, walked back home, and found the victim. Bjorgo had testified that appellant drove up to the house in a pickup truck that night.

The testimony at the postconviction hearing established, and the trial court ruled, that Bjorgo's testimony was extremely doubtful. Because the testimony was thoroughly contradictory, the trial court did not abuse its discretion in denying appellant's petition for postconviction relief.

Affirmed.