285 P.2d 612

**STATE of Arizona, Appellee,**

v.

**Arthur THOMAS, Appellant.**

No. 1045–1072.

Supreme Court of Arizona.

June 28, 1955.

W. Edward Morgan, Tucson, I. B. Tomlinson, Bisbee, for appellant.

Robert Morrison, Atty. Gen., L. Alton Riggs, Sp. Asst. Atty. Gen., Wes E. Polley, Bisbee, Cochise County Atty., for appellee.

PHELPS, Justice.

This appeal is prosecuted by defendant from an order of the trial court denying defendant's motion for a new trial based upon newly discovered evidence.

Defendant was convicted of murder in the first degree on June 19, 1953, and in accordance with the jury's verdict a judgment and sentence of death was imposed. On an appeal therefrom we affirmed the judgment and fixed a new date for the execution. State v. Thomas, 78 Ariz. 52, 275 P.2d 408. The motion for a new trial, here involved, was filed on December 2, 1954, under the provisions of Rules Cr.Proc. 357(c) (section 44–2004(c), A.C.A.1939). On the same day defendant filed a petition with the trial court for permission to examine a certain pair of white canvas gloves introduced in evidence at the trial as gloves worn by defendant on the night of the murder. The gloves were bloody and three fingers of the right glove were cut at a point which corresponded with cuts on defendant's same three fingers. The examination of the gloves was sought for the purpose of having the examining expert test the blood to ascertain whether there were present in it "antibodies of certain febrile groups" against which defendant as a member of the armed forces had been immunized by vaccination during the war. The petition was denied. Assuming but not deciding that the order denying the petition is appealable, no appeal was taken therefrom. Therefore the correctness of the ruling of

160

the trial court on that question is not before us.

Certainly such petition constitutes no part of the motion for a new trial which must necessarily be based on newly discovered evidence. The petition was designed to discover new evidence upon which to base the motion for a new trial but until such new evidence was discovered it formed no basis for a motion for a new trial. It would be utter folly to grant a new trial upon claimed evidence which does not now exist and may never come into existence. This disposes of applicant's assignment of error No. 2.

■ He contended in assignment No. 1 that the court erred in ruling that defendant's statement made while under the influence of sodium amytal "was not new and additional evidence under the statute." Counsel forthrightly admits that he has found no case which sustains his position but that all cases hold to the contrary. He points out that in People v. Jones, 42 Cal.2d 219, 266 P.2d 38, while the court refused to admit the statements of the defendant made while under the influence of sodium amytal, it did say that the psychiatrist who observed him while under the influence of sodium amytal should have been permitted to testify as an expert and to state on what basis he reached his conclusion. This is in harmony with the other reported cases in that in no case was the statement of defendant while under such influence admitted in evidence.

Some of the grounds upon which this kind of evidence is rejected are:

" * * * that the statements to be produced would be hearsay, self-serving, and conjectural since the truth thereof would depend entirely on the psychiatrist's opinion which conceivably might conflict with the opinion of another psychiatrist." People v. Cullen, 37 Cal.2d 614, 234 P.2d 1, 8.

Other cases base it upon the proposition that it is not yet scientifically established that it is at all accurate. Another reason for rejecting such evidence is that the tests were not reliable or generally approved and accepted by members of the medical profession specializing in psychiatry. The case giving the most exhaustive consideration to this character of evidence, we believe to be State v. Lindemuth, 56 N.M. 257, 243 P.2d 325, 335. After discussing the subject at length, citing many medical authorities the court quotes a report from the American Journal of Psychiatry, Vol. 107, No. 8, February 1951 issue, pp. 586–593, giving the result of experiments made on nine persons who had intravenous injections of sodium amytal and were questioned while under its influence. "Each of the subjects had a true and a cover story. We quote from page 589 of the article:

" 'It is of interest that the 3 subjects diagnosed as normal (i. e., persons who perform adequately in their various functions, have good defenses and no highly pathological characteristics) maintained their cover stories. Of the 6 subjects diagnosed as neurotic, 2 promptly revealed the true story; 2

made partial admissions, consisting of a complex pattern of fantasy and truth; one admitted what most likely was a fantasy as truth; and the one obsessive-compulsive individual maintained his cover story except for one parapraxia, (faulty or blundering action). We were particularly struck by the fact that G. U. and S. S., who confessed readily, had strong unconscious guilt feelings.

" 'The fantasies under sodium amytal can be understood only in the light of intimate knowledge of the subjects' unconscious processes. Such fantasies produced during the sodium amytal interview at times had the character of a confession as in the case of K. D., who confessed to beating the plumber, while in reality probably only the subject was beaten. Such fantasies are similar to dreams and daydreams; at times they have a highly symbolic character as in C. Y. when she spoke of the disgusting beard of a sexualized father figure, while this particular person in reality had no beard. * * * ' "

The court concluded by saying:

"Until the use of the drug as a means of procuring the truth from people under its influence is accorded general scientific recognition, we are unwilling to enlarge the already immense field where medical experts, apparently equally qualified, express such diametrically opposite views on the same facts and conditions, to the despair of the court reporter and the bewilderment of the fact finder."

There is of course the further reason why such testimony should not be admitted in evidence as pointed out by a number of the cases and that is that the testimony is taken outside the presence of the court and the jury and there is no opportunity for cross-examination.

We unhesitatingly rule that the court correctly denied the motion for a new trial.

Order affirmed.

LA PRADE, C. J., and UDALL, WINDES and STRUCKMEYER, JJ., concur.