**Arthur THOMAS, Appellant,**

v.

**Frank EYMAN, Superintendent of the State Prison of Arizona, Appellee.**

**No. 15098.**

United States Court of Appeals Ninth Circuit.

Aug. 8, 1956.

Rehearing Denied Sept. 12, 1956.

W. Edward Morgan, Tucson, Ariz., for appellant.

Robert Morrison, Atty. Gen., James H. Green, Sp. Asst. Atty. Gen., Wes Polley, Cochise County Atty., Bisbee, for appellee.

Before MATHEWS, POPE and LEMMON, Circuit Judges.

MATHEWS, Circuit Judge.

On March 16 or 17, 1953, Janie Miskovich was murdered in Cochise County, Arizona. Thereafter, on March 17, 1953, her body was found, an investigation was made, and appellant, Arthur Thomas, was arrested in Cochise County by Jack Howard, sheriff of that county. On March 18, 1953, the sheriff took appellant before a magistrate—L. T. Frazier, a justice of the peace in Cochise County—for preliminary examination; appellant waived such examination; the magistrate held appellant to answer to the Superior Court of the State of Arizona in and for Cochise County and fixed his bail at $25,-000; and, appellant having failed to furnish bail, the magistrate committed him to the custody of the sheriff.[1]

Thereafter, in the Superior Court, an information was filed charging appellant

---

1. See Rules 35, 39, 40 and 55 of the Arizona Rules of Criminal Procedure, A.C. A. (Arizona Code Annotated) 1939, §§ 44-140, 44-302, 44-303 and 44-322.

with the murder.[2] Appellant was arraigned, pleaded not guilty and had a jury trial. The trial began on June 1, 1953, and ended on June 19, 1953, when the jury returned a verdict finding appellant guilty of first-degree murder and fixing his punishment at death.[3] Appellant moved for a new trial. The motion was denied on June 26, 1952. Thereupon, on June 26, 1953, the Superior Court rendered judgment on the verdict, sentenced appellant to death and issued a warrant directing the sheriff to deliver appellant to the superintendent of the State prison of Arizona for execution.[4] The sheriff did so deliver appellant on or before July 6, 1953. At all times thereafter, appellant was a prisoner in the superintendent's custody pursuant to the Superior Court's judgment.

Appellant appealed from the Superior Court's judgment to the Supreme Court of the State of Arizona, hereafter called the Arizona Supreme Court. The Arizona Supreme Court affirmed the Superior Court's judgment on October 18, 1954.[5] Appellant moved the Arizona Supreme Court for a rehearing. The Arizona Supreme Court denied that motion on November 16, 1954. On December 2, 1954, appellant filed in the Superior Court a second motion for a new trial.[6] The Superior Court made an order denying that motion on December 18, 1954. Appellant appealed from that order to the Arizona Supreme Court. The Arizona Supreme Court affirmed that order on June 28, 1955.[7] Appellant petitioned for certiorari to review both decisions of the Arizona Supreme Court—the decision affirming the Superior Court's judgment[8] and the decision affirming the Superior Court's order denying appellant's second motion for a new trial.[9] Certiorari was denied on January 16, 1956.[10]

Thereafter, in the United States District Court for the District of Arizona, W. Edward Morgan, acting in behalf of appellant,[11] filed two applications[12]—one on March 1, 1956, and one on March 9, 1956—each praying for a writ of habeas corpus directed to appellee, Frank Eyman, who, on March 1, 1956, and at all times thereafter, was superintendent of the State prison of Arizona.[13]

The District Court did not at any time grant appellant a writ of habeas corpus or issue an order directing appellee to show cause why such a writ should not be granted,[14] nor did it hold a plenary hearing on the applications. However appellee's counsel appeared before the District Court and, on March 9, 1956, filed with the District Court a transcript[15] of all proceedings had and all

---

2. See Rules 112 and 114 of the Arizona Rules of Criminal Procedure, A.C.A.1939, §§ 44–501 and 44–503.

3. See A.C.A.1939, § 43–2903.

4. See Revised Code of Arizona 1928, § 5119; State ex rel. Conway v. Superior Court of the State of Arizona, 60 Ariz. 69, 131. P.2d 983.

5. State v. Thomas, 78 Ariz. 52, 275 P.2d 408.

6. The motion of December 2, 1954, was or purported to be a motion for a new trial on the ground of newly discovered evidence. See Rules 355 and 357(c) of the Arizona Rules of Criminal Procedure, A. C.A.1939, §§ 44–2002 and 44–2004(c).

7. State v. Thomas, 79 Ariz. 158, 285 P.2d 612.

8. State v. Thomas, 78 Ariz. 52, 275 P.2d 408.

9. State v. Thomas, 79 Ariz. 158, 285 P.2d 612.

10. Thomas v. Arizona, 350 U.S. 950, 76 S. Ct. 326.

11. W. Edward Morgan, Hayzel B. Daniels and I. B. Tomlinson were counsel for appellant in the Superior Court and in the Arizona Supreme Court.

12. Each application consisted of an affidavit made and signed by Morgan. Appellant did not sign or verify either of them. The first application was entitled "Petition for writ of habeas corpus." The second application was entitled "Amended petition for writ of habeas corpus."

13. In the applications, appellee was called a warden, and the State prison was called a penitentiary.

14. See the first paragraph of 28 U.S.C.A. § 2243.

15. The transcript was in eight volumes (2,616 pages). It was part of the record on appellant's appeal from the Superior

testimony taken in the Superior Court [16] and copies of all briefs filed in the Arizona Supreme Court on appellant's appeal from the Superior Court's judgment. Having considered the applications, the transcript, the briefs and the Arizona Supreme Court's decision affirming the Superior Court's judgment,[17] the District Court on March 13, 1956, entered an order denying the applications. From that order appellant has appealed.

Appellant contends that the District Court erred in denying the applications without granting a writ of habeas corpus or issuing an order to show cause and without a plenary hearing.

Appellant being a State prisoner, the District Court could not properly grant him a writ of habeas corpus unless it appeared that he was in custody in violation of the Constitution of the United States.[18]

In determining whether appellant was entitled to a writ of habeas corpus, it was proper for the District Court to consider—as it did—the transcript of proceedings had and testimony taken at appellant's trial, the briefs filed on appellant's appeal from the Superior Court's judgment and the Arizona Supreme Court's decision affirming that judgment, as well as the applications.[19]

The first application—the one filed on March 1, 1956—stated that "on the date of apprehension,[20] [appellant] was roped and putitively [sic] lynched in the presence of Jack Howard, the then sheriff of [Cochise County];" that "subsequent to said roping, and while under fear and coercion, [appellant] made * * * confessions of commission of the crime;" [21] and that "one of said confessions, over the objection of counsel,[22] was admitted into evidence,[23] * * * in violation of the Fourteenth Amendment to the United States Constitution."

Liberally construed, these statements may be taken to mean that an involuntary confession of appellant was admitted into evidence at his trial in violation of the Fourteenth Amendment. Thus the first application may be deemed to have raised a Federal constitutional issue, namely, whether the Fourteenth Amendment was so violated. No other Federal constitutional issue was raised in or by either of the applications.

The transcript showed the following facts:

The only "confession" admitted into evidence at appellant's trial was an oral statement made by him on March 18, 1953, when he was taken before the magistrate (L. T. Frazier) for preliminary examination. That statement, hereafter called the confession, was admitted into evidence by the admission of the magistrate's testimony concerning it. That testimony was as follows:

"He [appellant] was there on the charge of murder. I read the complaint to him and told him that he had a right to a preliminary hearing in the justice court,[24] or he might waive that right and have his hearing in the Superior Court. I told him he had the right to employ an

Court's judgment and is part of the record here.

16. See 28 U.S.C.A. § 2247.

17. State v. Thomas, 78 Ariz. 52, 275 P.2d 408.

18. See 28 U.S.C.A. § 2241(c); Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L. Ed. 469.

19. Brown v. Allen, supra; Boyden v. Webb, 9 Cir., 208 F.2d 201, 203. See also Schell v. Eidson, 8 Cir., 203 F.2d 902; United States ex rel. Gawron v. Ragen, 7 Cir., 211 F.2d 902; United States ex rel. O'Connell v. Ragen, 7 Cir., 212 F.2d 272; Ferguson v. Manning, 4 Cir., 216 F.2d 188; Bailey v. Smyth, 4 Cir., 220 F.2d 954.

20. Meaning, we suppose, the date of appellant's arrest—March 17, 1953.

21. Meaning, we suppose, the crime of murdering Janie Miskovich.

22. See footnote 11.

23. Meaning, we suppose, that the confession was admitted into evidence at appellant's trial.

24. Meaning, obviously, a preliminary hearing before the magistrate, the magistrate being, in this case, a justice of the peace.

attorney to assist him in preparing his case, and that he would be allowed a reasonable length of time for the preliminary hearing, and he said, 'I don't need any lawyer. I am guilty. I killed the woman.' " [25]

Prior to the admission of the above quoted testimony, evidence was presented in the absence of the jury on the issue of the voluntariness of the confession, and, as a preliminary matter, the Superior Court held that it was voluntary. [26] Thereafter evidence on the issue of voluntariness was presented to the jury, the above quoted testimony was admitted, and the issue of voluntariness was submitted to the jury with appropriate instructions. [27]

On his appeal from the Superior Court's judgment, appellant assigned as error the admission of the above quoted testimony, his contention [28] being that its admission violated the Fourteenth Amendment, (1) in that the confession shown by the testimony was a plea of guilty which he had entered when taken before the magistrate for preliminary examination and had withdrawn by pleading not guilty in the Superior Court; and (2) in that the confession was involuntary.

Rejecting appellant's contention, the Arizona Supreme Court held that the confession was not a plea of guilty, there being in Arizona no such thing as an arraignment or a plea of guilty or not guilty in a preliminary examination; that the above quoted testimony was properly admitted; and that the issue of the voluntariness of the confession was properly submitted to the jury. [29]

■ Thus the Arizona Supreme Court determined adversely to appellant the only Federal constitutional issue raised in the habeas corpus proceeding. The District Court accepted that determination as correct. Hence the District Court was not required to grant a writ of habeas corpus or to issue a show cause order or to hold a plenary hearing. [30]

Order affirmed.

25. The above quoted testimony of the magistrate was given on his direct examination. On cross-examination by appellant's counsel, the magistrate testified: "After I read the complaint to him and he stated that he was guilty, that he did kill the woman, I asked him if he killed her with an ax. He said, 'No. I killed her with a knife.' "

26. This holding was announced in the absence of the jury.

27. The instructions on this issue were as follows:
"The State has introduced in evidence before you certain statements claimed to have been made by the ·defendant [appellant] after his arrest and while he was in the custody of the officers of the law, which statements are relied on in part by the State to establish the guilt of the defendant of the offense charged, and you are instructed, ladies and gentlemen of the jury, that confessions and statements made by one charged with an offense must be carefully scrutinized and received with great caution, yet, when they are made voluntarily and deliberately, such confessions and statements may be considered as evidence for and against the person making them, the same as any other evidence, but if a confession or statement is made by one in custody under such circumstances as show he was induced to make the same by punishment, intimidation or threats on the part of the persons who had him in charge, or that show that the confessions and statements were not freely and voluntarily made, then they cannot be considered as evidence against the person making them.

"In this case if you do not find that the confessions and statements by the defendant while in custody were freely and voluntarily made and made without punishment, intimidation or threats on the part of the persons having the defendant in custody, then you must disregard such statements or confessions as affording any evidence against the defendant whatsoever.

·"I further instruct you that you may consider prior acts of intimidation, threats or punishment to the defendant, if made, in considering whether or not a confession made at a later time is voluntary or involuntary."

28. This appeared from the brief filed by appellant on his appeal from the Superior Court's judgment.

29. State v. Thomas, 78 Ariz. 52, 275 P.2d 408.

30. See cases cited in footnote 19.

POPE, Circuit Judge.

I concur. What convinces me that the court below did not err in exercising its discretion to accept the State court's resolution of the fact issues involved is the admirable manner in which the State trial judge dealt with what the Arizona Supreme Court called the "unsavory incidents" which attended petitioner's apprehension and arrest.

It is apparent that the trial judge believed the testimony of a State Highway patrolman that the county sheriff not only stood by while petitioner and another prisoner in his custody were roped about the neck and dragged by mounted members of a mob, but that he even said to petitioner "Will you tell the truth, or I will let them go ahead and do this," or "I will go ahead and let them use this." [1]

By a ruling which, it must be conceded, was in accordance with the highest traditions of the bench, the trial judge held that the effects of this misconduct on the part of the sheriff were such that a confession taken from Thomas the following day by the county attorney, and a confession taken two days later at the county attorney's office, must both be rejected and excluded as coerced and involuntary. It was prior to the taking of either of these rejected confessions that Thomas was taken before the magistrate where he admitted his guilt. The argument is, that if Thomas were so terrorized by the officially condoned threats of lynching that his later confession in the county attorney's office could not be voluntary, then his statement to the magistrate, which followed even more closely the lynching threats, must likewise be taken to have been received when he was under the same psychological coercion, particularly in view of the fact that he was then without counsel, and only the same sheriff, and one of his deputies was present aside from the court officials.

More precisely, the contention is that the federal court should have taken testimony and itself examined into this fact question, and in connection therewith have permitted the petitioner to give his testimony. For reasons which satisfied them counsel for petitioner did not put him on the stand at the preliminary inquiry, in the absence of the jury, into the circumstances of the confession. This failure to use his testimony is something of which petitioner cannot complain here.[2] It is complained that at the time of this preliminary ruling defense counsel did not know that the highway patrolman's chief had forbidden him to talk to them, and did not know that his testimony would show these "unsavory incidents", and hence the trial judge was not informed of this when he admitted the magistrate's testimony.[3] But after the preliminary admission of this confession, the whole question as to whether it was voluntary was submitted to the jury by instructions as to which no fault is found, and the jury of course heard the patrolman's testimony, and its verdict resolved the question. Also, the trial judge later denied a new trial.

I am not only unable to perceive any respect in which the State trial judge failed to afford petitioner due process in respect to a determination of the question of whether this confession was coerced. Those best able to judge of this question of fact, the judge and the jury, dealt with it in a manner which shows no vital flaw. With the demonstrated strict regard which the trial judge obviously had for

---

1. See the Arizona Supreme Court decision, State v. Thomas, 78 Ariz. 52, 275 P.2d 408, at page 418.

2. "A failure to use a state's available remedy, in the absence of some interference or incapacity * * * bars federal habeas corpus." Brown v. Allen, 344 U.S. 443, 487, 73 S.Ct. 397, 422, 97 L.Ed. 469.

3. Appellant asserts that the trial judge later stated that had he heard the patrolman's story before he ruled, he would have excluded this confession. Appellee says the record does not show any such thing. Appellant supplies no transcript references and we are unable to find anything to this effect in the record.

the protection of petitioner's constitutional rights, I see no reason why the court below should not accept his and the jury's determination.