**People of the State of Illinois, Plaintiff-Appellant, v. Larry Harper, Defendant-Appellee.**

Gen. No. 11,132.

Fourth District.

July 30, 1969.

TRAPP, P. J., dissenting.

John Morton Jones, State's Attorney of Vermilion County, of Danville (William J. Scott, Attorney General of State of Illinois, of Springfield, and Fred G. Leach, Assistant Attorney General, of counsel), for appellant.

Unger and Stewart, of Danville (John Unger, Sr., of counsel), for appellee.

CRAVEN, J., delivered the opinion of the court.

The defendant was indicted for the crime of rape. Prior to trial the defendant moved to suppress certain prosecution evidence relating to the use of a so-called "truth serum." The circuit court ultimately entered an order suppressing the evidence and the State appealed directly to the Supreme Court. After briefs were filed the Supreme Court, on its own motion, transferred the appeal to this court for decision on the ground that the order suppressing the evidence was not a final judgment reviewable by the Supreme Court. People v. Lerch, 34 Ill2d 305, 215 NE2d 257 (1966). This court does have jurisdiction on appeal by virtue of Supreme Court Rule 604 (Ill Rev Stats 1967, c 110A, § 604).

The motion, answer and affidavits are summarized in the order of the trial court, and from these documents the following factual recitation seems to be uncontroverted:

One Carmen Goodwin was raped in her home in Georgetown, Illinois, on April 14, 1967. At the time of the assault and for a considerable period of time thereafter the victim maintained that she was unable to identify her assailant. The victim was living in a house owned by the parents of the defendant and he had formerly resided in the house. At the request of the sheriff of Vermilion County the victim and the defendant were examined by a "polygraph examiner" of the State Department of Public Safety, and that examiner expressed the

205

opinion that such examination indicated that the victim was telling the truth when she stated she was unable to identify her assailant and that the defendant was telling the truth when he denied involvement in the offense. The polygraph examination was in April of 1967.

In January of 1968, the victim voluntarily submitted herself to a psychiatric examination by a Dr. Kiersch during which she was examined both under hypnosis and while under the influence of sodium amobarbital. The hypnosis examination was not productive of any information.

A one and one-half hour interview under the influence of the drug, given intravenously, resulted first in the victim's assertion that she did not know who it was who raped her or who came into her room, and later the interviewer stated that she asserted that it was the defendant and his report further indicates that at one point she identified another as the one who perpetrated the assault. The psychiatrist expressed the opinion that the victim suffered from hysterical amnesia subsequent to the offense and that her behavior under the drug substantiated this. He further expressed the opinion that her recall as to the occurrence events under the drug was "at least 95%" accurate and that this patient, "under Amytal, feels that she could see her attacker and could identify him as Larry Harper . . . ." The trial court ruled that the polygraph-examination results were inadmissible, and further held "That evidence of any facts or supposed facts which the said Carmen Goodwin may have learned solely as a result of hypnosis or the use of Amytal or other so-called 'drug serum' is inadmissible in evidence in this case and the same is ordered suppressed in the interest of justice." This appeal relates solely to that portion of the order suppressing the evidence as to the drugs and no issue is submitted with reference to the

polygraph examination. We affirm the action of the trial court.

In People v. Myers, 35 Ill2d 311, 220 NE2d 297 (1966), cert denied, 385 US 1019, 17 L Ed2d 557, 87 S Ct 752 (1967), the Supreme Court discussed the use of a drug, sodium pentothal, and the admissibility of the responses of the defendant to the psychiatrist while under the influence of that drug. In the course of that case the court held it was not error for the trial court to exclude testimony concerning the defendant's responses while under the influence of the drug. The issue is discussed there in the context of impeachment or whether the psychiatrist can be permitted to testify to explain the use of the drug so as to give his opinion on the patient's (defendant's) mental condition. It seems to us that necessarily the Supreme Court made a judgment as to the purported accuracy or scientific acceptability of narcoanalysis and rejected it.

In Lindsey v. United States, 237 F2d 893, the prosecutrix in a statutory rape case was impeached by letters admitting that her accusations were false. In an effort to rehabilitate the witness the Government introduced a recording of her subsequent interview with a psychiatrist while she was under the influence of sodium pentothal. The Court of Appeals reversed, citing an article by two law-school and two medical-school professors (62 Yale LJ 315) which concluded that narcoanalysis is by no means an infallible tool nor should it be so regarded by psychiatrists. The tape recording of the narcoanalysis was held to be inadmissible. The court did not specifically pass upon the question of whether the psychiatrist could express his own opinion as to the truthfulness or accuracy of the victim's testimony.

In Townsend v. Sain, 372 US 293, 9 L Ed2d 770, 83 S Ct 745 (1963), it was held that a confession obtained

while under the influence of drugs was inadmissible. In 23 ALR2d 1310, the use of drugs in an effort to ascertain truth is equated with the use of lie-detector tests, and we are there told that no court has as yet recognized the admissibility of the results of "truth serum tests." The reasons for denying admission may be said to vary but the results seldom do. Thus, in some cases admissibility seems to have been denied on the grounds of inadequate foundation or inadmissibility for want of proof of reliability (Orange v. Commonwealth, 191 Va 423, 61 SE2d 267 (1950); State v. Hudson (Mo), 289 SW 920 (1926)), or that the test results would be hearsay and self-serving declarations (see People v. McNichol, 100 Cal App2d 554, 224 P2d 21 (1950); People v. Cullen, 37 Cal2d 614, 234 P2d 1 (1951)). In Henderson v. State, 94 Okla Crim 45, 230 P2d 495, 23 ALR2d 1292 (1951), the court excluded evidence of the results of such tests on the grounds that such tests had not attained scientific recognition or dependability so as to justify their use in criminal proceedings. To the same effect, see Merritt v. Commonwealth (Ky), 386 SW2d 727; State v. Levitt, 36 NJ 266, 176 A2d 465; Jones on Evidence, 5th ed, § 435.

In People v. Jones, 42 Cal2d 219, 266 P2d 38, a psychiatrist's testimony regarding results of an examination was held to be admissible. Within the context of that case the admissibility was for the purpose of determining whether the defendant was a sexual deviate. The court recognized the inadmissibility of statements of one under the influence of a truth drug where the statements were offered for the purpose of proving truth of the matter asserted. See also State v. White, 60 Wash2d 551, 374 P2d 942. A psychiatrist was permitted to testify to statements made while patient was under sodium amytal. Lemmon v. Denver & R. G. W. R. Co., 9 Utah2d 195, 341 P2d 215.

 In this case the information elicited from the prosecutrix while under the influence of the so-called "truth drug" would clearly be offered to establish the truthfulness of the matter asserted. The People assert admissibility on the grounds that the prosecutrix should be allowed to explain the reason for her failure to initially identify her attacker and cite in support thereof People v. Izzo, 14 Ill2d 203, 151 NE2d 329, 89 ALR2d 187 (1958), cert denied, 362 US 403, 4 L Ed2d 864, 80 S Ct 812 (1960) (a case involving fear—not drugs), and further urge that the case of Harding v. Maryland, 5 Md App 230, 246 A2d 302 (1968) approved the use of hypnosis to "unlock" the memory of a prosecutrix in a rape case. We see no reason to equate examination under hypnosis and examination while under the influence of a drug having the effect of a so-called "truth serum" except to note that the scientific reliability of neither is sufficient to justify the use of test results of either in the serious business of criminal prosecution. Calling a drug "truth serum" does not make it so. Nothing has been cited to us nor has our research disclosed anything that persuades us that it is so.

The Circuit Court of Vermilion County is affirmed.

Judgment affirmed.

SMITH, J., concurs.

TRAPP, P. J., dissents.

TRAPP, J., dissenting:

I concur in the principal opinion upon the issue of inadmissibility of the "product" of the sodium amytal interview, but I cannot agree that the order of the trial court is appealable as an order suppressing evidence un-

der the Supreme Court Rule 604. The trial court has not yet determined from evidence in the record what are the facts or supposed facts which Carmen Goodwin may have learned solely from the amytal interview, and upon the issues presented the order does not suppress testimony upon any specific matter of fact.

The State's Attorney answers the motion for a "protective order" with the allegation that Goodwin can now identify the defendant. It is apparent that defendant's counsel would insist that such testimony is solely the result of the amytal interview. It will then be necessary for the trial court to hear evidence and determine whether such testimony is subject to exclusion under the ruling announced.

Under the statutory motions to suppress a confession, c 38, § 114–11, or to suppress evidence illegally seized, c 38, § 114–12, the court hears evidence as to the manner of obtaining items of evidence and then enters an order stating that specific items of evidence are to be excluded. Upon review the issue is whether the court, upon the record, erred in admitting item A or in excluding item X. Here such steps are missing. As a result, the prosecution's brief and argument is essentially a series of ques-particular fact. Neither counsel nor this court can now state what has been suppressed.

The defendant's motion was for a "protective order." The court's ruling was responsive, but it was only advisory of prospective rulings upon the admissibility of evidence. It did not, in fact, suppress, i. e., determine that specific matters of testimony would be excluded under the stated rule of admissibility.