The **PEOPLE** of the State of Colorado, Plaintiff-Appellee,

v.

David Lee **STILES**, Defendant-Appellant.

No. 82CA0889.

Colorado Court of Appeals, Div. I.

May 17, 1984.

Rehearing Denied June 21, 1984.

Certiorari Denied Dec. 10, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Maureen Phelan, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Jody Sorenson Theis, Deputy State Public Defender, Denver, for defendant-appellant.

METZGER, Judge.

Defendant appeals his conviction by a jury of second-degree murder and first-degree assault for the September 1981 shooting of his wife, Lorna Stiles. We affirm.

The trial testimony showed that defendant, separated from his wife for four months, waited with a .22 magnum near her residence early on the morning of September 18, 1981. As she entered her car to go to work, he blocked her car with his, and carefully broke out her driver's side window with his gun, including the glass around the window's edges. Without saying anything, he reached inside the broken window and shot her six times: five times in her knees from a distance of approximately one inch, and one time in her heart, killing her almost instantly. He then drove away, and was apprehended shortly thereafter at a bank after withdrawing all the money in his accounts. Expert testimony showed that defendant was extremely intoxicated at the time of the offense.

Before trial, defendant sought and underwent a psychiatric examination. This examination was for the purpose of ascertaining defendant's mental state at the time of the killing and included a session at which defendant, after being given sodium amytal ("truth serum") by the psychiatrist, related his version of the incident during which his wife was killed.

During the psychiatric examination defendant stated that his wife said something to him as he approached her car with his gun. However, it was only during the sodium amytal session that he stated she had "taunted" him about her relationship with a black man, which enraged him.

Prior to the psychiatrist's testimony, the trial court granted the prosecution's motion *in limine*, excluding defendant's statements made to the psychiatrist concerning the incident unless defendant testified as well. Both defendant and his psychiatrist testified concerning the occurrences surrounding the killing.

The jury found defendant guilty of second-degree murder, first-degree assault, and violent crime. He was sentenced to the Department of Corrections for 24 years for second-degree murder and a concurrent term of eight years for first-degree assault.

I.

Defendant first contends that the trial court erred in granting the prosecution's motion *in limine* concerning the psychiatrist's testimony. Defendant sought to have his statements to the psychiatrist admitted as an exception to the hearsay rule pursuant to CRE 803(4). That provision excepts from exclusion as hearsay those:

"Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

Prior to the adoption of CRE 803(4), a physician expert witness who was consulted by a defendant solely for trial purposes could testify to a defendant's statements which formed the basis of the physician's opinion, (1) if those statements were relied upon by the physician in forming his opinion, and (2) if they were of a type generally

relied upon as a basis for expert opinions. However, such statements were admissible only as to the weight to be given the opinion they supported, but not for the truth of the matters they contained. *People v. Parks*, 195 Colo. 344, 579 P.2d 76 (1978); *see Houser v. Eckhardt*, 168 Colo. 226, 450 P.2d 664 (1969).

■ CRE 803(4) is identical to Fed.R. Evid. 803(4), and explicitly allows admission of a non-treating physician's recital of a defendant's statements for the truth of the matters they contain. 11 *Moore's Federal Practice* § 803(4)[2] (2d ed. 1982) (Advisory Committee's Note); *see also* 4 *J. Weinstein & M. Berger, Weinstein's Evidence*, § 803(4)[01] (1981); Quinn, *Hearsay in Criminal Cases under the Colorado Rules of Evidence: An Overview*, 50 *U.Colo.L.Rev.* 277 (197`).

However, the trial court must still exercise its discretion in allowing such evidence, and must make at least two determinations in that regard. The first of these, as with all other proffered evidence, is relevancy. CRE 401.

■ More importantly, a trial court must apply the factors set out in CRE 403 and may exclude the evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." These rulings are discretionary and will not be disturbed on review absent a gross abuse. *See People v. Abbott*, 638 P.2d 781 (Colo.1981).

In balancing the interests of the parties under CRE 403 and CRE 803(4), a trial court must consider the theory underlying the provisions of CRE 803(4). The prevailing view in virtually all states and in most federal courts is that statements made to a physician consulted not for treatment but only as a prospective witness should not be given substantive effect as a hearsay exception. *See* Annot., 37 A.L.R.3d 778 (1971). These jurisdictions adopt the rationale that the absence of a defendant's

motive to foster treatment nullifies the trustworthiness of his statements to the physician. As observed in *Aetna Life Insurance Co. v. Quinley*, 87 F.2d 732 (8th Cir.1937):

"If this were not the rule, then an injured person might have himself examined by a physician called for treatment, relate to him the alleged facts with reference to the circumstances under which he received his injuries, might place this physician on the witness stand to narrate his version of the facts and circumstances under which he received his injuries, and not himself take the stand at all, and by so doing deprive [his opponent] of the right of cross-examination."

■ In *United States v. Iron Shell*, 633 F.2d 77 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981), the court adopted the following test to evaluate evidence offered under CRE 803(4). We adopt it here since, in our view, it cogently reflects this trustworthiness rationale: "[F]irst, is the declarant's motive consistent with the purpose of the rule; and second, is it reasonable for the physician to rely on the information in diagnosis or treatment."

■ Applying that test to the evidence in this case, we conclude that the trial court's ruling was correct. As to whether defendant's motive was consistent with the rule, we note the defendant's statements to the psychiatrist here were solely for litigation purposes. There was no indication that defendant's statements related in any way to diagnosis for the purpose of treatment. Thus, the trustworthiness necessary for the exception to the hearsay rule is absent.

As to the second element of the test, the record contains no testimony that it was reasonable for this, or any, psychiatrist to rely on the information in question for diagnosis or treatment purposes. Evidence showing, pursuant to CRE 703, that the statements were "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject" would have been appropriate to assist the court in its determinations as to

this element, but such evidence was not presented.

■ As well, some of defendant's statements to the psychiatrist were made after he had been administered sodium amytal. While the admission of statements obtained via "truth serum" is discretionary with the trial court, *People v. Bynum*, 192 Colo. 60, 556 P.2d 469 (1976), there was an insufficient foundation to allow the doctor's testimony as to such statements. *See A. Moenssens, R. Moses, & F. Inbau, Scientific Evidence in Criminal Cases* §§ 15.01 et seq. (2d ed. 1978); *see also People v. Reynolds*, 638 P.2d 43 (Colo.1983) (results of polygraph tests excluded); *People v. Diaz*, 644 P.2d 71 (Colo.App.1981) (results of statements made while under hypnosis excluded).

■ A number of states have considered this issue. It is universally held that, inasmuch as such drugs do not produce reliable results, statements made under the influence of so-called "truth serums" are inadmissible as probative of substantive issues at criminal trials. *E.g., State v. Thomas*, 79 Ariz. 158, 285 P.2d 612 (1955), *cert. denied*, 350 U.S. 950, 76 S.Ct. 326, 100 L.Ed. 828 (1956); *Zeigler v. State*, 402 So.2d 365 (Fla.1981), *cert. denied*, 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982); *State v. Hemminger*, 210 Kan. 587, 502 P.2d 791 (1972); *People v. Cox*, 85 Mich. App. 314, 271 N.W.2d 216 (1978); 23 A.L. R.2d 1306. In our view, defendant's statements made while under the influence of sodium amytal should not have been admitted until their reliability had been established. However, this evidence was offered by defendant, and any error resulting from its admission inured to his benefit. *See People v. Shackelford*, 182 Colo. 48, 511 P.2d 19 (1973).

Thus, on the record before us, we conclude that the psychiatrist's recitation of defendant's statements should not have been admitted pursuant to CRE 803(4). That being the case, there is no merit to defendant's claim that the trial court's ruling created an intolerable tension between his Fifth Amendment right not to testify and his right to present witnesses in his defense under *Colo. Const.* art. II, § 16.

## II.

■ Defendant next contends that the trial court erred in restricting his direct examination of three witnesses who would have testified to statements of the victim. Defense counsel asserted that the statements were not offered for the truth of the matters asserted, but solely for the purpose of showing defendant's state of mind at the time of the shooting. The court refused to allow the testimony, finding that it was hearsay in that it related to the victim's state of mind, not that of the defendant. We agree; the proffered testimony did not comply with the "then existing mental condition" exception to the hearsay rule set out in CRE 803(3).

## III.

Relying on *People v. Lee*, 630 P.2d 583 (Colo.1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318 (1982), defendant next argues that the trial court erred in refusing to order a mistrial when the prosecutor made a brief reference during cross-examination of the defendant to the death of the victim's father two weeks after the victim was killed.

■ While the conduct of the prosecutor in eliciting this testimony cannot be condoned, the circumstances of this case do not warrant application of *People v. Lee, supra*. The evidence in question here was irrelevant, but not so prejudicial as to warrant a mistrial. We note as well that a mistrial was requested immediately after the prejudicial statement in *People v. Lee, supra*, while here defense counsel failed to do so.

## IV.

Defendant asserts that the trial court erred in rejecting his tendered instruction concerning the requisite mental states and the effect of intoxication upon him. We disagree.

The tendered instruction stated:

"You are instructed that diminished responsibility due to self-induced intoxication is not an affirmative defense to murder in the second degree, manslaughter, or criminally negligent homicide. However, evidence of intoxication may be considered by you in deciding whether the defendant was capable of forming the requisite mental states for all of the crimes charged."

 Defendant urges that his tendered instruction was proper under *People v. Gallegos*, 628 P.2d 999 (Colo.1981), which held that evidence of impaired mental condition can be considered as to the *mens rea* element for both general intent and specific intent crimes. . Defendant's argument is misplaced. Voluntary intoxication is a separate and distinct concept from mental impairment, and requires application of a different rationale. *Hendershott v. People*, 653 P.2d 385 (Colo.1982). Evidence of voluntary intoxication is incompetent to negate the intent element of a general intent crime such as second-degree murder. *People v. DelGuidice*, 199 Colo. 41, 606 P.2d 840 (1980). Thus, defendant's tendered instruction was an inaccurate statement of the law in effect at the time of trial, and the trial court was correct in refusing it.

## V.

Defendant's final assertion is that his sentence of twenty-four years is excessive and unduly harsh. The standard of review that applies is whether the trial court abused its discretion in imposing sentence. *Triggs v. People*, 197 Colo. 229, 591 P.2d 1024 (1979); *see People v. Mikkleson*, 42 Colo.App. 77, 593 P.2d 975 (1979). We find no abuse of discretion in the sentence imposed; this sentence was amply justified by the record. *See People v. Valencia*, 630 P.2d 85 (Colo.1981); *People v. Strong*, 190 Colo. 189, 544 P.2d 966 (1976).

We have considered defendant's other contentions of error and find them to be without merit.

The judgment and sentence of the trial court are affirmed.

PIERCE and BERMAN, JJ., concur.