**STATE of Minnesota, Respondent,**

v.

**Lonnie Dale SANDERS, Appellant.**

No. C0–83–1812.

Court of Appeals of Minnesota.

Sept. 25, 1984.

Review Granted Dec. 20, 1984.

Hubert H. Humphrey, III, State Atty. Gen., Michael T. Milligan, Cass Co. Atty., Walker, for respondent.

C. Paul Jones, State Public Defender, Mollie G. Raskind, Deputy State Public Defender, Minneapolis, for appellant.

Heard, considered and decided by PARKER, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

FOLEY, Judge.

Defendant was convicted by a jury of second-degree felony murder—an unintentional death caused by an intentional first degree assault. Minn.Stat. § 609.19(2) (1982). Defendant's motion for a new trial was denied, and he appeals.

We reverse and remand for a new trial.

### FACTS

Defendant Lonnie Sanders was convicted by a jury of second degree felony murder in the death of his younger brother Lew Sanders. The two brothers lived in separate homes in the Sanders family "compound" near Cass Lake, Minnesota, and maintained a close relationship.

The trial began on August 2, 1983, and was held in Walker, Minnesota. Lonnie testified that he was in his home when sometime after 1:00 a.m. on January 22, 1983, Lew came storming in yelling "I'm going to kill you Bit" (Lonnie's nickname), and picked up a knife. A fight ensued, which resulted in one stab wound in Lew's back. Lonnie said he did not remember stabbing Lew or even having the knife in his hands. Lonnie claimed self-defense, suggesting Lew was upset over a loan refusal the day before, and his emotions were aggravated by usage of alcohol and drugs. Defendant waived submission to the jury of the lesser-included offense of second-degree manslaughter.

On the final day of trial the jury assembled for closing arguments at 9:00 a.m., and retired for deliberations at approximately 11:40 a.m. Around 3:10 p.m. they requested clarification of the self-defense instructions, which were read back to them. At 10:50 p.m. defense counsel Mattson moved the jury be sequestered. The exchange between court and counsel went as follows:

MATTSON: In view of the length of time that they have deliberated, in view of the length of time that they have been assembled in the courthouse and in view of the fact that some of them had to drive sixty miles to get here, I would suggest that they are no longer of a frame of mind or the mental capability or the emotional capability to decide this case. I don't think that anybody, including Lonnie Sanders, deserves to have his fate decided by people who are working in this kind of conditions. So I would request that the jury be retired and sequestered and be assembled to begin deliberations tomorrow.

\* \* \* \* \* \*

MILLIGAN (for the state): * * * I would ask that the court allow them to remain in their deliberations, I would not ask the court to provide accommodations for them, I would ask that they be allowed to deliberate until one o'clock and if they have not reached a verdict then I do believe that they should be brought to a motel. I say that because Cass County is a very big county, some 100 miles end to end and it is 60 miles for some of them so it would take an hour and twenty minutes to get home and return.

THE COURT: Mr. Milligan, will you agree that the jurors could separate and go home now and come back in the morning and continue their deliberations?

MILLIGAN: I would do that.

THE COURT: Mr. Mattson, would you agree to that?

MATTSON: Your Honor, first of all I made a motion and would ask the court to rule on it. I do believe that sequestration is proper at this time.

THE COURT: Well, I'll rule on your motion but I won't have to rule on it if you agree that I can release the jurors and spend the night and then come back in the morning. Now, the Supreme Court has said if the defendant will agree to that, we can let the jurors separate and go home and sleep, come back in the morning and deliberate. If you agree to that, I have no question or problems at all, I will excuse them right now to go home, come back and start again at eight or eight-thirty in the morning.

MATTSON: Well, prior to making the decision, Your Honor, I would request the court rule on my motion at this time.

THE COURT: I won't rule on it unless you tell me whether you will agree to that. There will come a time if you won't agree to it, I'm going to have to make a decision on it, but I don't think I have arrived at that point yet. But I will, as I've said, if you and your client will on the record agree to permit the jury to go home and come back in the morning, I'll do that.

MATTSON: Well, I'll be frank and put my complete position on the record. We are talking about, I suppose, the lesser of two evils. To me the thing the Court ought to do is order that they retire and be sequestered. Now, if the court would deny that motion, I believe, and I will discuss this matter with Mr. Sanders, the lesser of two evils would be that they go home and come back tomorrow as opposed to continuing their deliberations at this time. *But I don't in any way want the record to reflect that I have agreed.*

THE COURT: Okay, that's the end of it. That's all I want you to tell me. If you will agree or not agree to permit them to go home and come back in the morning. *And you have said, no, we will not agree to that.*

                    *       *       *       *       *       *

THE COURT: The time is now 11:50 p.m. The jury has still has not returned a verdict. At eleven o'clock the court sent a message to the jury suggesting that they consider retiring and I asked them if they would like to retire for the night and resume deliberations in the morning. They returned a note and said that they would like to try a little longer. In the meantime, or since 10:30 the Clerk has made some inquiry about motel rooms for the jury and thus far she has not had any success in finding sufficient number of rooms in one hotel or motel to accommodate all twelve jurors. Mr. Mattson has informed the court that he and his client have conferred concerning this matter of permitting the jurors to retire to their homes. Mr. Mattson, what is your wish and that of your client?

MATTSON: Well, Your Honor, based on the reality of the situation and the lack of other alternatives, and specifically based upon our feeling that nobody's mind is sharp right now and the decisions may be made that are not based upon all proper consideration, we would, Your Honor, consent to the jury being sent home each to their respective homes to

reassemble tomorrow morning once again to resume their deliberations.

\* \* \* \* \* \*

THE COURT: \* \* \* but the only thing I hesitated about doing is that if Mr. Sanders has any reservations about permitting them to separate to go home, I certainly would not let them, because if the verdict is not to Mr. Sanders liking, I would not want this, whatever verdict they may bring in later on, if that is a disappointing verdict to Mr. Sanders, that the question of their separating tonight be raised as an objection to this verdict.

MATTSON: Well, when the court asked about reservations, obviously we have reservations on virtually every decision that we make and clearly there is some concern about them going home but there's much more concern about them staying and continuing deliberations right now. Based upon all of those facts we are requesting that they be sent home.

(Emphasis added).

The court then brought the jury in, and instructed them not to discuss the case with anyone. When they reconvened at 8:30 a.m. the next day the judge briefly instructed the jury on their duty to deliberate, but did not question them on any possible exposure they may have had overnight.

The verdict was guilty. The trial judge sentenced Sanders to 115 months, a downward departure from the presumptive 140 months. He said this was not a typical murder, and there is "at least some evidence that Lew Sanders was the aggressor." Sanders' motion for a new trial was denied. Sanders appeals, asking for a reversal for insufficient evidence, a new trial based on insufficiency of the evidence, admission of autopsy slides, and the failure to sequester the jury, or a reduction to second-degree manslaughter in the interests of justice.

## ISSUE

Whether defendant's consent to sending the jury home overnight was involuntary, resulting in a presumption of prejudice when a court fails to sequester a jury over defendant's objection.

## ANALYSIS

Minn.Stat. § 631.09 (1982) mandates jury sequestration during their deliberations. A recent amendment to Rule 26.03(5) of the Rules of Criminal Procedure, effective August 1, 1983, before this trial, allows the jury to be sent home overnight during deliberations if the defendant consents. Consistent with this change, but considering a case that arose before the amendment, this court recently held that "allowing the jurors to separate *over the objection of both the prosecution and the defendant* was presumptively prejudicial and is reversible error." *State v. Holly,* 350 N.W.2d 387, 389 (Minn.Ct.App.1984) (emphasis in original).

We noted in *Holly* that the presumption could be overcome if the judge conducted a brief voir dire of the jury the next morning to determine if there was any information concerning the case conveyed to the jurors by conversation, newspapers, radio, television, or other means, that ought to be disclosed to the court. If any information was transmitted the court should weigh its effect on that juror or jurors. The court should conduct the voir dire sua sponte, without a prior showing by counsel of jury contamination. This should be done as a matter of good trial practice even when a jury separates by consent of counsel during deliberations. This is different from the type of voir dire contemplated by *Schwartz v. Minneapolis Suburban Bus Co.,* 258 Minn. 325, 104 N.W.2d 301 (1960). Failure to question the jury by voir dire raises the constitutional problems of deprivation of the right to an impartial jury.

A fair reading of the exchange between court and counsel in this case shows that defense counsel's "consent" to permit the jury to separate overnight was not voluntary, but a reaction to the 'Hobson's choice' presented him by the court. The

citizen jury ought to be able to consider the weighty matters submitted to them, when their bodies and minds are rested, and not feel compelled to deliberate into the late hours of the night, when tiredness creeps in, thinking may become dulled or nerves frayed. This jury began deliberating early in the day and remained until midnight, to return by 8:30 the next morning, some with a 120 mile round trip to accomplish.

■ Nor can we understand why the prosecuting attorney would initially oppose housing the jury overnight. In this enlightened age, a jury should be treated with solicitous concern to the end that a person's strength of will not be worn down by sheer length of hours of continuous deliberation. Nor should a juror be sent to his or her home sixty miles away at midnight, after deliberating some twelve hours, to return by 8:30 the following morning. Trial courts should anticipate the possible need to house a jury and have tentative arrangements made, including transportation or engaging additional bailiffs if necessary. This is particularly true when the charge, as here, is second-degree murder, with an obvious potential for long deliberations. While the jury should be housed in the same hotel if at all possible, it is not reversible error to divide the jury into two groups, each in the custody of a bailiff, where necessary due to limited accommodations. *State v. Murphy*, 181 Minn. 303, 232 N.W. 335 (1930).

■ Due to our holding that *Holly* applies, the trial court's failure to sequester the jury or voir dire them after separation is presumptively prejudicial.

■ Sanders further objects to the jury instructions on self-defense, and ultimately contends that the judge shifted the burden of proof from the state to him. We emphasize here that jury instructions must be considered as a whole, and may be upheld if they are correct in their entirety. *State v. Spaulding*, 296 N.W.2d 870 (Minn.1977). Our concern focuses on the last sentence in the following instruction:

All of these three conditions must be met and the State has the burden of proving beyond a reasonable doubt the absence of justification, that is that the defendant did not act in self-defense. If you are satisfied that the defendant was acting in self-defense as I have defined in these instructions, you should return a not guilty verdict.

■ We recommend that should a similar charge be used on remand the court should clarify his instructions on the burden of proof to prevent any perceived shift to the defendant.

■ Having determined that a new trial is necessary in this case, we call the attention of both court and counsel to the possible application of Rule 403 of the Rules of Evidence regarding the autopsy slides. We note their possible prejudicial effect, especially where many of the slides may be duplicative and merely cumulative.

■ The defendant has also raised the issue of insufficiency of the evidence to support the verdict. We believe that in the light of the total circumstances presented in this case, resolution of the matter is for the jury.

### DECISION

Due to the crucial error of failure to sequester the jury over objection of defendant during deliberations, we remand for a new trial.

Reversed and remanded for a new trial.