**Lonnie Dale SANDERS,
Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. C5–86–1352.**

Court of Appeals of Minnesota.

Feb. 3, 1987.

Douglas W. Thomson, Deborah K. Ellis, Thomson, Hawkins & Ellis, Ltd., St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, Earl E. Maus, Cass Co. Atty., Walker, for respondent.

Heard, considered and decided by PARKER, P.J., HUSPENI and FORSBERG, JJ.

## OPINION

HUSPENI, Judge.

Appellant Lonnie Sanders appeals from orders denying his petitions for a writ of habeas corpus and post-conviction relief. We affirm.

## FACTS

Sanders was convicted of murder in the second degree for stabbing his brother and was sentenced to prison for 116 months. On appeal this court reversed the conviction and remanded for a new trial based on the non-sequestration of the jury during deliberations. *State v. Sanders*, 355 N.W.2d 200 (Minn.Ct.App.1984). That decision was reversed by the supreme court which reinstated Sanders' conviction. *State v. Sanders*, 376 N.W.2d 196 (Minn. 1985). The supreme court found that the evidence was sufficient and that Sanders was not entitled to a new trial based on the admission of certain autopsy photographs, alleged misleading instructions on self-defense and the decision of the trial court to allow jurors to separate during overnight recess in deliberations.

Sanders then petitioned the district court for a writ of habeas corpus. In the petition he requested he be delivered to the Metropolitan Medical Center in Minneapolis for a sodium amytal ("truth serum") interview to reconstruct his recollection of the stabbing incident.

Sanders also filed a petition for post-conviction relief seeking a new trial or reduction in sentence. The basis for the new trial request was (1) newly discovered evidence consisting of evidence which might be discovered because of a sodium amytal interview and (2) error in the jury instructions concerning the duty to retreat aspect of self-defense. Both petitions were subsequently denied without hearing by different district court judges, and Sanders appeals.

## ISSUES

1. Did the district court and post-conviction court err in denying Sanders' petitions without a hearing?

2. Did the post-conviction court abuse its discretion in denying relief based on erroneous self-defense instructions?

## ANALYSIS

### I.

1. In denying Sanders' petition for a writ of habeas corpus, the district court ruled that Sanders had failed to state sufficient facts to warrant the issuance of a writ. A habeas corpus hearing is not needed when the defendant does not allege sufficient facts to constitute a prima facie case of relief. *See Kelsey v. State*, 349 N.W.2d 613 (Minn.Ct.App.1984).

Sanders claims he should have been allowed temporary release from custody to have a sodium amytal interview. Sanders, however, cites no authority for his contention that he is entitled to a writ of habeas corpus for the purpose of *temporary release* to undergo a sodium amytal interview.

Essentially, the function of the writ of habeas corpus is to release one from

unlawful restraint. *State, ex rel., Bassett v. Tahash,* 263 Minn. 447, 116 N.W.2d 564, 565 (1962), *cert. denied,* 371 U.S. 958, 83 S.Ct. 514, 9 L.Ed.2d 504 (1963). Sanders sought habeas corpus to be released temporarily to pursue discovery for the purpose of seeking a new trial based on newly discovered evidence. He did not allege a denial of fundamental constitutional rights or a lack of jurisdiction by the sentencing court, for example. Any relief to which Sanders might be entitled must be secured by administrative procedures and is not available by habeas corpus. Hence, the petition for writ of habeas corpus was properly denied without a hearing because there were no grounds on which the petition could have been granted.

■ 2. The post-conviction court also denied without a hearing Sanders' petition for temporary release to secure a sodium amytal interview. In so doing, the trial court relied on *Morgan v. State,* 384 N.W.2d 458 (Minn.1986), *cert. denied,* 430 U.S. 936, 97 S.Ct. 1564, 51 L.Ed.2d 782. In *Morgan* the supreme court stated:

A petitioner for post-conviction relief is not entitled to a hearing on the petition if ■ "the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief" or (2) if "the issues raised * * * have previously been decided by the court of appeals or the supreme court in the same case." Minn.Stat. § 590.04, subds. 1, 3 (1984). Furthermore, all claims known but not raised at the time of direct appeal will not be considered in a subsequent petition for post-conviction relief.

*Id.* at 459–60. To determine whether the summary denial was proper requires a determination of whether any of the alleged grounds for relief require a hearing. *Id.* at 460.

The post-conviction court determined that Sanders' claim regarding the sodium amytal interview is insufficient to entitle him to any relief because the claim does not constitute newly discovered evidence. The court reasoned that the claim was available at trial and throughout the direct appeal process and that the evidence sought was speculative.

The standards on review of a denial of a post-conviction petition seeking a new trial on the basis of newly discovered evidence were discussed in *Berry v. State,* 364 N.W.2d 795 (Minn.1985):

The decision whether to grant a new trial based upon newly-discovered evidence rests with the trial court and will not be disturbed unless there is an abuse of discretion. (Citations omitted.) A petitioner seeking postconviction relief has the burden of establishing, by a fair preponderance of the evidence, facts which warrant a reopening of the case. Minn. Stat. § 590.04, subd. 3 (1984); *Gallagher v. State,* 286 Minn. 335, 176 N.W.2d 618 (1970). A new trial may be granted on the basis of newly-discovered evidence—

if the petitioner shows that the evidence could not have been discovered through the exercise of due diligence before the trial; that at the time of the trial the evidence was not within petitioner's or his counsel's knowledge; that the evidence is not impeaching, cumulative, or doubtful; and that it would probably produce a result different from or more favorable than that which actually occurred.

*Id.* at 796, quoting *State v. Caldwell,* 322 N.W.2d 574, 588 (Minn.1982). Sanders sought the sodium amytal interview to help revive his memory since he did not recollect actually stabbing his brother.

However, an explanation for his failure to remember could have been sought much earlier through due diligence. Sanders always claimed he could not remember actually stabbing the victim as indicated by statements made to police and at trial. The lack of memory on this point cannot be deemed a surprise. We further note that even when Sanders' direct appeal was pending and when he was released for a year following this court's reversal of his conviction and remand for a new trial, he made no effort to pursue this issue.

Even if Sanders' memory could be revived, itself a speculative concept, he has

not shown that evidence so derived would be admissible in any future criminal proceeding. Our supreme court has repeatedly applied a general rule of inadmissibility of hypnotically-induced testimony as expressed. *State v. Ture,* 353 N.W.2d 502, 513–14 (Minn.1984); *State v. Blanchard,* 315 N.W.2d 427, 430–31 (Minn.1982); *State v. Koehler,* 312 N.W.2d 108, 110 (Minn. 1981), and *State v. Mack,* 292 N.W.2d 764, 771 (Minn.1980). The court has also excluded graphological personality assessment testimony, which is based on handwriting analysis, and polygraph test results. *State v. Anderson,* 379 N.W.2d 70, 79 (Minn.1985), *cert. denied,* — U.S. —, 106 S.Ct. 2248, 90 L.Ed.2d 694 (1986). These decisions make it doubtful that sodium amytal induced testimony would be admissible. Further, "it is universally held that, inasmuch as such drugs do not produce reliable results, statements made under the influence of so-called 'truth serums' are inadmissible as probative of substantive issues at criminal trials." *People v. Stiles,* 692 P.2d 1124, 1128 (Colo.Ct.App. 1984) (citing *State v. Thomas,* 79 Ariz. 158, 285 P.2d 612 (1955), *cert. denied,* 350 U.S. 950, 76 S.Ct. 326, 100 L.Ed. 828 (1956); *Zeigler v. State,* 402 So.2d 365 (Fla.1981), *cert. denied,* 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982); *State v. Hemminger,* 210 Kan. 587, 502 P.2d 791 (1972); *People v. Cox,* 85 Mich.App. 314, 271 N.W.2d 216 (1978)). *See State v. Blome,* 209 N.J. Super. 227, 238, 507 A.2d 283, 288 (1986), *cert. denied,* 104 N.J. 458, 517 A.2d 444 (1986); *People v. Harper,* 111 Ill.App.2d 204, 207–08, 250 N.E.2d 5, 6 (1969).

We conclude that the proposed evidence not only could have been discovered earlier through due diligence, but it also is doubtful and speculative and would probably not produce a more favorable result.

## II.

■ Sanders next argues that the post-conviction court abused its discretion when it refused to consider his claim of alleged erroneous self-defense instructions. However, the supreme court expressly considered and upheld the self-defense instructions which were given to the jury and about which Sanders now complains, when it observed:

> Defendant concedes that it was appropriate for the trial court to use the language for CRIMJIG 7.08 to the effect that the legal excuse of self-defense "includes the duty to retreat or avoid the danger if reasonably possible." He argues, however, that the use of both CRIMJIG 7.08 and CRIMJIG 7.05, with its condition that "defendant's election to defend himself must have been such as a reasonable man would have made in the light of the danger to be apprehended and the existence of any alternative way of avoiding the danger," excessively emphasized the defendant's duty to retreat. We disagree. CRIMJIG 7.08 was drafted in such a way that it could be given in connection with * * * CRIMJIG 7.05 (self-defense—causing death) * * *. Furthermore, we have approved CRIMJIG 7.08 in a number of cases, including cases in which it was given in conjunction with CRIMJIG 7.05.

*Sanders,* 376 N.W.2d at 201.

Issues already raised on direct appeal will not be considered in a subsequent petition for post-conviction relief. *Morgan,* 384 N.W.2d at 459–60; *Case v. State,* 364 N.W.2d 797, 800 (Minn.1985); *State v. Knaffla,* 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). The trial court did not err in its determination that the issue of the self-defense instructions had been considered and determined adversely to Sanders by the supreme court.[1]

---

1. The post-conviction court also noted that Sanders' appellate counsel was at fault for having an investigator contact the jury to determine any prejudice from the claimed erroneous jury instructions. The affidavit of the investigator submitted by Sanders has been stricken pursuant to order of this court dated December 19, 1986, and not considered on appeal. In view of our determination of the self-defense instruction issue, we do not address the question of alleged impropriety in conducting these juror interviews.

Finally, we conclude that because the record conclusively establishes that Sanders was not entitled to the relief he sought, the post-conviction court did not abuse its discretion in denying Sanders' petition for post-conviction relief without a hearing.

## DECISION

The orders of the district court and post-conviction court denying appellant's petitions for habeas corpus and post-conviction relief are affirmed.

Affirmed.